# No. 18-5276

---
---

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

JASON LEOPOLD AND
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,
*Appellants*,

v.

UNITED STATES OF AMERICA,
*Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
No. 1:13-mc-00712 (Howell, C.J.)

---
---

# BRIEF FOR PETITIONERS-APPELLANTS

---
---

Jeffrey Light
LAW OFFICE OF JEFFREY L. LIGHT
1712 Eye St., NW, Suite 915
Washington, DC 20006
Telephone: (202) 277-6213
jeffrey@lawofficeofjeffreylight.com

*Counsel for Jason Leopold*

Katie Townsend
THE REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
ktownsend@rcfp.org

*Counsel for the Reporters Committee
for Freedom of the Press and Counsel
of Record for Petitioners-Appellants*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Petitioners-Appellants Jason Leopold and the Reporters Committee for Freedom of the Press certify as follows:

## A.     Parties and *Amici*

Petitioners-Appellants are Jason Leopold and the Reporters Committee for Freedom of the Press.  The Reporters Committee for Freedom of the Press is an unincorporated 501(c)(3) nonprofit association of reporters and editors.

Appellee is the United States of America, which is represented by the United States Attorney for the District of Columbia.

No *amici* appeared in the district court.  The following *amici* are expected to appear in support of Petitioners-Appellants' position on appeal:

- Brief of Amici Media Organizations;

- Brief of Amici Former Magistrate Judges;

- Brief of Amici First and Fourth Amendment Scholars; and

- Brief of Amici Camille Fisher, Staff Attorney, The Electronic Frontier Foundation; Aaron Mackey, Staff Attorney, The Electronic Frontier Foundation; and Riana Pfefferkorn.

Petitioners-Appellants are unaware of any *amici* expected to appear in support of Appellees in this appeal.

i

**B.  Rulings Under Review**

Petitioners-Appellants seek review of the Order of the U.S. District Court for the District of Columbia in *In the Matter of the Application of Jason Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, No. 1:13-mc-00712 (Howell, C.J.), 300 F. Supp. 3d 61 (D.D.C. Feb. 26, 2018), granting in part and denying in part their petitions to unseal certain electronic surveillance applications and orders.  Petitioners-Appellants also seek review of the Order of the U.S. District Court for the District of Columbia in *In the Matter of the Application of Jason Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, No. 1:13-mc-00712 (Howell, C.J.), 327 F. Supp. 3d 1 (D.D.C. Aug. 16, 2018), denying their motion for reconsideration of the February 26, 2018 Order.

**C.  Related Cases**

This case has not previously been before this Court or any other court. Counsel are not aware of any related cases currently pending in this Court or in any other court within the meaning of Circuit Rule 28(a)(1)(C).

**CORPORATE DISCLOSURE STATEMENT**

As required by Circuit Rule 26.1, Petitioners-Appellants state that the Reporters Committee for Freedom of the Press is an unincorporated 501(c)(3) nonprofit association of reporters and editors with no parent corporation and no stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ v

GLOSSARY ............................................................................................... viii

STATEMENT OF JURISDICTION ............................................................... 1

STATEMENT OF THE ISSUES ..................................................................... 1

RELEVANT STATUTES ................................................................................ 2

STATEMENT OF THE CASE ......................................................................... 2

    A.    The Pen Register Act and Stored Communications Act ........................... 6

        1. Pen Register/Trap and Trace Devices ............................................. 6

        2. The Stored Communications Act ..................................................... 7

    B.    Relevant Procedural Background ........................................................... 10

    C.    Relief Sought by Petitioners ................................................................. 12

    D.    The District Court's Memorandum Opinion and Order ......................... 15

    E.    The District Court's Order on Petitioners' Motion for Reconsideration  16

SUMMARY OF ARGUMENT ....................................................................... 19

ARGUMENT ................................................................................................. 22

    I.    The Public has a First Amendment Right of Access to Judicial Records Filed in SCA Warrant, PR/TT, and Section 2703(d) Matters; the District Court's Holding to the Contrary Requires Reversal. ................................................. 23

        A. Experience Supports a Constitutional Right of Access to SCA Warrant Materials Post-Investigation. ................................................................... 24

        B. Experience Supports a Constitutional Right of Access to PR/TT and Section 2703(d) Materials Post-Investigation. ........................................ 34

        C. Public Access to SCA Warrant, PR/TT, and Section 2703(d) Materials Post-Investigation Would Play a Significant Positive Role in the Functioning of the Criminal Justice System. ........................................... 36

    II.    The Public's First Amendment Right of Access to Judicial Records Filed in SCA Warrant, PR/TT, and Section 2703(d) Matters is Overcome Only If, and to the Extent that, a Compelling Interest Necessitates Sealing. ............ 40

    III.    The Public has a Common Law Right of Access to Judicial Records Filed in SCA Warrant, PR/TT, and Section 2703(d) Matters; the District Court's Holding to the Contrary Requires Reversal. ................................................. 41

        A. PR/TT, SCA Warrant, and Section 2703(d) Materials are Judicial Records to which the Common Law Right of Access Attaches. ............ 43

        B. The District Court Erroneously Held That the Common Law Right of Access Does Not Apply to Judicial Records Filed in SCA Warrant, PR/TT, and Section 2703(d) Matters. ..................................................... 46

C. The Limited Prospective Relief Accorded by the District Court is Incompatible with the Strong Common Law Presumption that Judicial Records Are Open to Public Inspection. ................................................. 47

IV. The District Court's Rulings Misinterpret and Misapply *Hubbard*. ............. 50

    A. The District Court Erred as a Matter of Law by Construing the *Hubbard* Test as Calling for the Court to Consider the Administrative Burden of Public Access to Judicial Records. ......................................................... 51

    B. Even if a Court May Properly Consider Administrative Burden Under *Hubbard*, it is Not Dispositive. ............................................................. 54

    C. The District Court Must Make Specific, On-the-Record Findings to Support Any Conclusion that the Common Law Right of Access is Overcome. ................................................................................... 57

V. The Public has a First Amendment and Common Law Right to Inspect Docket Sheets in SCA Warrant, PR/TT, and Section 2703(d) Matters; the District Court's Holding to the Contrary Requires Reversal. ...................... 58

    A. Both the First Amendment and Common Law Presumptions of Access Apply to Court Docket Sheets. ................................................................ 59

    B. The District Court Erred as a Matter of Law in Concluding that the Public has No First Amendment or Common Law Right to Inspect Docket Sheets in SCA Warrant, PR/TT, and Section 2703(d) Matters. . 61

CONCLUSION ........................................................................................... 65

# TABLE OF AUTHORITIES[*]

## CASES

*Baltimore Sun Co. v. Goetz,* 886 F.2d 60 (4th Cir. 1989) ................................ 27, 46

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) .................................... 32, 36, 40

*CBS, Inc. v. District Court,* 765 F.2d 823 (9th Cir.1985) ........................................ 64

*\*Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014) ......................... 61, 62, 63, 65

*\*EEOC v. Nat'l Children's Center, Inc.*, 98 F.3d 1406
   (D.C. Cir. 1996) ..................................................... 24, 37, 46, 49, 59

*FAA v. Cooper*, 566 U.S. 284 (2012) ...................................................... 28

*FTC v. Church & Dwight Co.*, 665 F.3d 1312 (D.C. Cir. 2011) ........................... 23

*FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987) ........................ 41

*\*Hartford Courant Co. v. Pellegrino,* 380 F.3d 83
   (2d Cir. 2004) ............................................... 37, 54, 61, 62, 63, 66

*\*In re Appl. of United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*,
   707 F.3d 283 ("*Appelbaum*") (4th Cir. 2013) ........................................ 37, 38, 47

*In re Appl. of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F.
   Supp. 2d 83 (D.D.C. 2008) ................................................. 26, 37, 38

*In re Appl. of Newsday, Inc.*, 895 F.2d 74 (2d Cir. 1990) ...................................... 47

*In re EyeCare Physicians of America*, 100 F.3d 514 (7th Cir. 1996) .................... 46

*In re Reporters Comm. for Freedom of the Press*, 773 F.2d
   1325 (D.C. Cir. 1985) ........................................................... 25, 34, 36

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) ........................................... 55, 66

*In re Sealed Search Warrant, No. 04-M370(DRH)*,
   2006 WL 3690639 (N.D.N.Y. Dec. 11, 2006) .................................... 47

*In re Search of Fair Finance*, 692 F.3d 424 (6th Cir. 2012) ................................. 46

*In re Search Warrant for Secretarial Area Outside Office of Gunn*,
   855 F. 2d 569 (8th Cir. 1988) ............................................................ 27

*In re State-Record Company, Inc.,* 917 F.2d 124 (4th Cir. 1990) ........................ 61

*Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268
   (D.C. Cir. 1991) ............................................................. 49, 60, 61

*Lorillard v. Pons*, 434 U.S. 575 (1978) ....................................................... 30

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) ................... 51

*Matter of the Appl. of WP Co.*, No. 16-mc-351 (BAH), 2016 WL 1604976 (D.D.C.
   Apr. 1, 2016) ..................................................................... 26

*Matter of Warrant to Search a Certain E-Mail Account Controlled and Maintained
   by Microsoft Corp.*, 829 F.3d 197 (2d Cir. 2016), *vacated and remanded sub
   nom. United States v. Microsoft Corp.*, 138 S. Ct. 1186 (2018) ....... 28, 29, 32, 40

---

[*] Authorities upon which Petitioners-Appellants chiefly rely are marked with asterisks.

*MetLife, Inc. v. Fin. Stability Oversight Council,
865 F.3d 661 (D.C. Cir. 2017)........................................ 22, 23, 44, 45, 46, 48, 52

Meyer v. UNUM Life Ins. Co. of Am., 12-cv-1134-KHV,
2014 WL 1095743 (D. Kan. Mar. 19, 2014) ........................................ 54

Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot., 474 U.S. 494 (1986).... 30

Nixon v. Warner Commcn's, 435 U.S. 589 (1978)...................................... 43, 49, 50

*Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986)..... 4, 16, 24, 38, 40, 42

Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980) .................. 20, 51, 63

Smith v. United States Dist. Court for S. Distr. of Ill.,
956 F.2d 647 (7th Cir. 1992) ........................................ 41

Stone v. I.N.S., 514 U.S. 386 (1995)........................................ 30

Times Mirror Co. v. United States, 873 F.2d 1210 (9th Cir. 1989)...................... 27

Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.,
565 F. App'x 477 (6th Cir. 2012)........................................ 62

*United States v. El-Sayegh, 131 F.3d 158
(D.C. Cir. 1997) ........................................ 23, 24, 25, 27, 34, 35, 37, 44, 45, 46

United States v. Wells Fargo Bank Account No. 7986104185,
643 F. Supp. 2d 577 (S.D.N.Y. 2009) ........................................ 47

United States v. Amodeo, 71 F.3d 1044 (2d Cir. 1995).................................... 47, 50

United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) ........................................ 41

United States v. Brice, 649 F.3d 793 (D.C. Cir. 2011).................................... 42, 43

United States v. Business of Custer Battlefield Museum and Store,
658 F.3d 1188 (9th Cir. 2011) ........................................ 47

United States v. Camick, 796 F.3d 1206 (10th Cir.),
cert. denied, 136 S. Ct. 601 (2015)........................................ 54

*United States v. Hubbard,
650 F.2d 293 (D.C. Cir. 1980)........................ 4, 17, 44, 50, 52, 53, 54, 57, 58, 59

United States v. Kott, 380 F. Supp. 2d 1122
(C.D. Cal. 2004), aff'd on other grounds, 135 Fed. App'x 69 (9th Cir. 2005) ... 26

United States v. Loughner, 769 F. Supp. 2d 1188 (D. Ariz. 2011) ........................ 26

United States v. Mendoza, 698 F.3d 1303 (10th Cir. 2012) .................................. 62

United States v. Miller, 425 U.S. 435 (1976) ........................................ 32

United States v. Valenti, 987 F.2d 708 (11th Cir. 1993) .................................. 55, 61

United States v. Warshak, 631 F.3d 266 (6th Cir. 2010)........................................ 9

Wash. Legal Found. v. U.S. Sentencing Comm'n,
89 F.3d 897 (D.C. Cir. 1996)........................................ 45, 48


*Washington Post v. Robinson, 935 F.2d 282
(D.C. Cir. 1991) ........................................ 24, 42, 43, 44, 63, 67

**STATUTES AND REGULATIONS**

18 U.S.C. §§ 2701-2712 ...................................................... 3, 8, 28, 29, 34
18 U.S.C. §§ 3121-3127 ....................................................................... 3, 6
Clarifying Lawful Overseas Use of Data ("CLOUD") Act, Pub. L. 115-141, Div.
 V, § 103, 132 Stat. 348 (2018) ........................................................... 29
28 C.F.R. § 50.9 ................................................................................. 14
28 C.F.R. § 50.10 ............................................................................... 39

## OTHER AUTHORITIES

Ann E. Marimow, *Justice Department's scrutiny of Fox News reporter James
 Rosen in leak case draws fire*, Wash. Post., May 20, 2013 ......................... 10, 39
Standing Order and Attachment: List of Docket Numbers, with limited associated
 information, for Pen Register and/or Trap and Trace Applications for Orders
 (Oct. 2, 2018) ................................................................................. 51
Mem. Of Understanding: Electronic Filing of Certain Sealed Appls. and Orders
 ("MOU") (Aug. 15, 2017) .................................................................. 15
Order Den. Mot. Unseal Docs & Publicly Docket Ct. Rs., *In re Jennifer Granick &
 Riana Pfefferkorn*, No. 16-mc-80206-KAW (N.D. Cal. June 23, 2017) ............ 56
Ryan Lizza, *How Prosecutors Fought to Keep Rosen's Warrant Secret,* The New
 Yorker (May 24, 2013) ...................................................................... 10
Stephen W. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret
 Docket*, 6 Harvard L. & Policy Rev. 313 (2012) ................................. 34, 40, 41

## LEGISLATIVE MATERIALS

H.R. Rep. No. 99-647 (1986) ................................................................ 29
H.R. Rep. No. 114-528 (2016) ............................................................... 9
S. Rep. No. 99-541 (1986) .................................................................... 27

## GLOSSARY

| | |
|---|---|
| **ECPA** | Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510 *et seq*. |
| **PRA** | Pen Register Act, 18 U.S.C. §§ 3121-3127 |
| **PR/TT** | Pen Register and/or Trap and Trace |
| **SCA** | Stored Communications Act, 18 U.S.C. §§ 2701-2712 |
| **USAO** | U.S. Attorney's Office for the District of Columbia |

**STATEMENT OF JURISDICTION**

The District Court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as this appeal is taken from a final order entered by District Court. This appeal is timely pursuant to Fed. R. App. P. 4(a)(4)(A)(iv). Petitioners-Appellants filed their Notice of Appeal on September 7, 2018. JA965.

**STATEMENT OF THE ISSUES**

1. Whether the District Court erred in concluding that the public's right of access to judicial records guaranteed by the First Amendment to the U.S. Constitution has no application to any of the following categories of judicial records post-investigation: (i) warrants sought under the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712, and related court filings; (ii) court orders sought pursuant to 18 U.S.C. § 2703(d) of the SCA ("Section 2703(d)"), and related court filings; and (iii) court orders authorizing the use of pen register and/or trap and trace ("PR/TT") devices pursuant to the Pen Register Act ("PRA"), 18 U.S.C. §§ 3121-3127, and related court filings.

2. Whether the District Court erred in concluding that the common law presumption of access to judicial records has no application post-investigation to (i) SCA warrants and related court filings, (ii) Section 2703(d) orders and related court filings, and (iii) PR/TT orders and related court filings, and that the public has only a prospective common law right of access to certain limited information

1

about SCA warrant, Section 2703(d), and PR/TT matters filed in the District Court in the form of reports generated by its Clerk's office on a biannual basis.

3.      Whether the District Court erred in concluding that neither the public's right of access to judicial records guaranteed by the First Amendment to the U.S. Constitution nor the common law presumption of access to judicial records applies to court docket sheets in SCA warrant, Section 2703(d), and PR/TT matters post-investigation;

4.      Whether the District Court erred in altering the controlling test for the common law right of access to judicial records established by this Court in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), including by interpreting *Hubbard* as permitting courts to weigh—and ultimately give dispositive weight to—the anticipated administrative burden of providing public access to judicial records.

**RELEVANT STATUTES**

Relevant statutory provisions are attached as an addendum to this brief.

**STATEMENT OF THE CASE**

This litigation arises out of separate petitions filed by journalist Jason Leopold and the Reporters Committee for Freedom of the Press (the "Reporters Committee") (collectively, "Petitioners") seeking public access to three categories of judicial records filed with the U.S. District Court for the District of Columbia that are presumptively open to the public under the First Amendment and common

law, yet are routinely maintained under seal indefinitely, without any compelling or countervailing interest necessitating such secrecy. Specifically, in the proceedings below, Petitioners sought access—primarily on a forward-looking basis—to applications, orders, and other judicial records, including court dockets, related to (1) law enforcement requests for judicial authorization to use a pen register and/or trap and trace ("PR/TT") device pursuant to the Pen Register Act ("PRA"), 18 U.S.C. §§ 3121-3127; (2) warrants issued pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2712; and (3) court orders under 18 U.S.C. § 2703(d) of the SCA ("Section 2703(d)").

On February 26, 2018, the District Court issued a Memorandum Opinion and Order granting in part and denying in part Petitioners' petitions. JA854-925. Specifically, the District Court held that (i) the First Amendment right of access does not apply to any of the judicial records at issue, and (ii) that the common law affords the public a prospective right of access only to certain, limited categories of information about PR/TT, Section 2703(d), and SCA warrant matters filed with the District Court on a periodic basis. JA924.

On August 16, 2018, the District Court entered a Memorandum Opinion and Order denying Petitioners' motion for reconsideration of the February 26, 2018 Order. JA926-64. The August 16, 2018 Order, among other things, clarifies the District Court's holding that, "in consideration of the significant administrative burdens" that disclosure would impose on the Clerk's Office and the U.S.

Attorney's Office for the District of Columbia ("USAO"), "no common law right of access exists" as to currently sealed PR/TT, Section 2703(d), and SCA warrant materials, JA961, and that for PR/TT, Section 2703(d), and SCA warrant matters filed with the District Court in the future, the public has only a narrow common law right to certain limited information about them on a periodic basis. JA956.

Petitioners respectfully assert that the District Court made the following errors of law subject to de novo review by this Court. *First*, the District Court incorrectly applied the two-part test established by the U.S. Supreme Court in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*"), and this Court's precedent to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters post-investigation, erroneously holding that the First Amendment right of access has no application to them. *Second*, the District Court misinterpreted and misapplied the test established by this Court in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), to the same judicial records, erroneously holding that the common law presumption of access, which applies to all judicial records, has no application to them, and affording the public only a narrow right of access to certain limited information about PR/TT, Section 2703(d), and SCA warrant matters filed with the District Court in the future, and only on a periodic basis. In particular, the District Court erroneously interpreted *Hubbard* as standing for the proposition "that no asserted common law right of access exists in the first place where recognizing such right of access would impose undue administrative

4

burdens." JA961. *Third*, the District Court erroneously held that the public has no presumptive right of access under either the First Amendment or common law to court docket sheets in SCA warrant, PR/TT, and Section 2703(d) matters, even after the investigations that prompted the filing of those matters have ended.

Petitioners respectfully request that this Court reverse the District Court's holding that the common law and First Amendment presumptions of access do not apply to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters post-investigation, and to the docket sheets associated with those matters, and remand this case to the District Court with instructions to evaluate the relief sought by Petitioners in accordance with the public's qualified rights of access and pursuant to correct legal standards.

Because the District Court misinterpreted the six-factor *Hubbard* test this Court established for determining whether and to what extent the common law presumption of access to judicial records is overcome, this Court should also instruct the District Court on the proper application of *Hubbard* to be applied on remand. To the extent that the District Court on remand concludes that the constitutional and common law presumptions of access are overcome as to any aspect of the limited retrospective relief sought by Petitioners, or on a prospective basis, the District Court's restrictions on public access to post-investigation SCA warrant, PR/TT, and Section 2703(d) materials, including docket sheets, must be narrowly tailored and supported by specific, on-the-record factual findings.

**A.      The Pen Register Act and Stored Communications Act**

**1.      Pen Register/Trap and Trace Devices**

PR/TT devices are law enforcement surveillance tools the use of which is governed by the PRA, 18 U.S.C. §§ 3121-3127, which is found in Title III of the Electronic Communications Privacy Act of 1986 ("ECPA").  PR/TT devices record metadata, such as telephone numbers, email addresses, and other routing information transmitted by wire or electronic communications carriers.  18 U.S.C. § 3127.  A court "shall enter" an order authorizing the installation and use of a PR/TT device if it "finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation," 18 U.S.C. § 3123(a)(1)—a showing lower than the "probable cause" showing required to obtain a warrant under Federal Rule of Criminal Procedure 41.[1]

By statute, a court "order authorizing or approving the installation and use" of a PR/TT device "shall direct" that "the order be sealed until otherwise ordered by the court."  18 U.S.C. § 3123(d).  While the PRA contemplates unsealing of PR/TT orders when "ordered by the court," *id.*, such unsealing is, in practice, uncommon.  As a result, PR/TT orders and related judicial records are typically shielded from public scrutiny permanently.

---

[1] Unless otherwise stated, all references herein to the "Rules" are to the Federal Rules of Criminal Procedure.

Use of PR/TT devices by law enforcement is widespread. A Department of Justice report on the use of PR/TT devices by four federal law enforcement agencies showed that in 2017, 25,400 people were affected by those agencies' use of pen registers and 26,043 people were affected by their use of trap and trace devices on telephone facilities; 3,250 pen registers and 3,208 trap and trace devices were authorized for use on email and/or Internet networks. *See* Report on the Use of Pen Registers and Trap and Trace Devices by the Law Enforcement Agencies/Offices of the Department of Justice for Calendar Year 2017, https://perma.cc/5DA6-YCNE. These numbers reflect only PR/TT devices judicially authorized for use by the four agencies included in the report. Information made public during the course of this litigation revealed that, from 2008 through 2016, the USAO alone filed 2,248 applications in the U.S. District Court for the District of Columbia for judicial authorization to use a PR/TT device—approximately 250 per year. JA42-43, 109-10, 530-31.

### 2. The Stored Communications Act

The SCA, 18 U.S.C. §§ 2701-2712, found in Title II of ECPA, provides government entities with mechanisms to compel third-party electronic communication service or remote computing service providers to disclose the contents of stored wire and electronic communications, as well as records and

other information pertaining to subscribers.  These mechanisms include warrants, *see id*. § 2703(a), (b)(1)(A), (c)(1)(A), and Section 2703(d) orders.

Like PR/TT orders, Section 2703(d) orders may be issued on a showing lower than that required to obtain a warrant under Rule 41:  When seeking a Section 2703(d) order, the government must present to the court "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." *Id.* § 2703(d).[2]

Warrants issued pursuant to the SCA, on the other hand, must be "issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures)." *Id*. § 2703(a). Rule 41 requires "probable cause to search for and seize a person or property or to install and use a tracking device." Fed. R. Crim. P. 41(d)(1).  Though no provision of the SCA requires the sealing of warrants or orders issued under its provisions

---

[2] Although Sections 2703(a), (b) and (d), by their terms, would appear to authorize the government to obtain the contents of electronic communications stored for over six months based on a standard lower than "probable cause," the Sixth Circuit found that a Fourth Amendment probable cause warrant is required to compel the production of all email. *See United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010).  It has been the policy of the Department of Justice since 2013 to use SCA warrants exclusively when compelling the disclosure of the contents of electronic communications.  *See* H.R. Rep. No. 114-528, at 9 (2016).

for any period of time, *see* 18 U.S.C.§ 2703, such records are frequently sealed indefinitely.

There is evidence that federal magistrate judges around the country have issued a large number of SCA warrants and Section 2703(d) orders in recent years. Google, Inc. ("Google"), for example, has reported that it received 6,900 warrants, 11,223 subpoenas, 344 pen register orders, and 1,658 "other court orders" from the government in the first six months of 2018 alone. *See* Google Transparency Report, https://perma.cc/K98E-SHNK. Further, there is indication that the number of applications for Section 2703(d) orders filed in the District Court below, specifically, have increased dramatically over time. Information made public during this litigation shows that approximately 100 applications for Section 2703(d) orders were filed in the District Court each year from 2008 to 2013, while approximately 1,136 such applications were filed in the District Court in 2016 alone. JA804-05.

The government has sought and obtained judicial authorization under the provisions of the SCA to directly target journalists' communications. For example, in May 2013, it came to light that in 2010 the Federal Bureau of Investigation ("FBI") had successfully obtained an SCA warrant requiring Google to provide it with the contents of emails from the personal email account of Fox News reporter James Rosen in connection with an investigation of a suspected "leak" of classified information. *See* Ann E. Marimow, *Justice Department's scrutiny of Fox News*

*reporter James Rosen in leak case draws fire*, Wash. Post., May 20, 2013, https://perma.cc/U25E-9AFU. Rosen was reportedly unaware of the warrant's existence until it was reported in *The Washington Post*. *See* Ryan Lizza, *How Prosecutors Fought to Keep Rosen's Warrant Secret,* New Yorker, May 24, 2013, http://bit.ly/1TD3How.

**B.      Relevant Procedural Background**

On July 16, 2013, Jason Leopold, now a journalist with BuzzFeed News, filed a petition to unseal government applications and related orders for "[PR/TT devices], tracking devices, cell site location, stored email, telephone logs, and customer account records from electronic service providers, except for those which relate to an ongoing investigation." JA14. Leopold also sought a list of all docket numbers associated with government applications and orders under the PRA and the SCA in closed investigations, JA17, and a presumptive 180-day expiration date for all sealing or non-disclosure orders for such materials, extendable by the government for active investigations or the existence of exceptional circumstances. JA18.

The USAO responded to Leopold's petition, objecting to the scope of his request for relief but conceding "that applications and orders relating to electronic surveillance methods need not necessarily be permanently sealed." JA858.

On August 17, 2016, the Reporters Committee filed an unopposed motion to intervene and a separate petition seeking, *inter alia*, an order "directing the Clerk

of the Court to unseal certain court records, to make dockets and docket entries concerning such records public, and for other appropriate relief." JA34. Specifically, the Reporters Committee sought to unseal all applications and supporting documents in PR/TT, SCA warrant, and Section 2703(d) matters related to closed investigations, as well as court orders granting or denying such applications. The Reporters Committee also sought an order "requiring that dockets and docket entries reflecting such applications and orders be made public and that any future applications and orders of this kind be reflected on public dockets and either filed publicly or unsealed after a period of time consistent with statutory, constitutional, and common law requirements." JA34-35. Its motion to intervene was granted on August 18, 2016. JA4.

Thereafter, Petitioners and the USAO met and conferred, under the supervision of the District Court, in an effort to narrow and resolve certain issues concerning the relief requested by Petitioners. As a result of these discussions, Petitioners agreed to limit the retrospective relief they sought in certain respects. The Proposed Order ultimately submitted by Petitioners to the District Court sought primarily prospective relief designed to increase transparency for future PR/TT, Section 2703(d), and SCA warrant matters filed in the District Court.

With respect to existing PR/TT, Section 2703(d), and SCA warrant matters already under seal in the District Court, the parties' discussions resulted in (i) the release by the Clerk's Office of docket numbers and limited docket information for

PR/TT and certain SCA matters filed during an agreed-upon range of years, (ii) the public release by the USAO of redacted PR/TT applications and orders from four sample matters filed in 2012, and (iii) the public filing by the USAO of lists of agreed-upon categories of information concerning 10% of PR/TT matters filed by the USAO in the District Court in 2012. JA862. Petitioners and the USAO disagreed as to whether the USAO would provide the agreed-upon categories of information for all sealed PR/TT matters filed by the USAO in the District Court since 2008, or for only a ten percent "sample" from each year. JA513. Accordingly, the District Court ordered the parties to brief the issue and, on May 19, 2017, Petitioners filed a memorandum addressing the public's constitutional and common law rights of access to PR/TT materials. JA9.

On May 22, 2017, the District Court ordered Petitioners to file a supplemental memorandum that also addressed Section 2703(d) and SCA warrant materials, and to "specify the precise relief [they] sought." *Id*.

Petitioners filed their Supplemental Memorandum of Points and Authorities in Support of their Applications to Unseal and a Proposed Order setting forth the specific relief they sought on August 25, 2017. JA10; JA845-53.

## C.    Relief Sought by Petitioners.

Petitioners' Proposed Order requested primarily prospective relief. Specifically, Petitioners requested public access to docket sheets on a moving-forward basis, as well as the unsealing of judicial records filed in future PR/TT,

Section 2703(d), and SCA warrant matters post-investigation.  JA846, 849, 851.

In particular, Petitioners proposed that the USAO or other government entity that initiated the matter be required to promptly move to unseal or partially unseal it at the close of the related criminal investigation.  As Petitioners explained in their Supplemental Memorandum, not only is the government attorney who files the application presumably in the best position to determine when and to what extent to seek unsealing, but such a requirement is also consistent with the obligations of federal prosecutors, generally.  Pet'rs' Suppl. Mem. at 34, *In re Appl. of Jason Leopold*, No. 1:13-mc-712 (D.D.C. May 18, 2018), ECF No. 47.  For example, Department of Justice policy makes clear that the government "has a compelling duty to protect the societal interest in open proceedings."  28 C.F.R. § 50.9(b); Justice Manual, tit. 9, § 5.150.  Thus, not only are government attorneys obligated to "ordinarily oppose closure[,]" they are also required to periodically review sealed matters to determine whether continued closure is justified.  *See* 28 C.F.R. § 50.9(f).

For PR/TT and Section 2703(d) materials, Petitioners also sought limited retrospective relief.  Specifically, Petitioners requested (i) the public release of limited docket information for sealed Section 2703(d) matters similar to what the Clerk's Office had provided for sealed PR/TT matters, and (ii) publicly filed lists of certain categories of information for 100% of sealed PR/TT matters, similar to what the USAO had provided for 10% of those matters.  JA846, 848-49.

The USAO filed its response to Petitioners' Supplemental Memorandum on October 26, 2017.  JA11.  The USAO focused its response almost entirely on Petitioners' request for limited retrospective relief as to PR/TT and Section 2703(d) matters currently under seal.  It did not dispute that there is a right of public access to docket sheets; it also conceded that "there is a First Amendment and common law qualified right of access to search warrants and related materials in closed investigations," and did not dispute Petitioners' assertion that SCA warrants are akin to traditional warrants for purposes of public access.  Gov't's Resp. to Pet'rs' Suppl. Mem. at 23-24, *In re Appl. of Jason Leopold*, No. 1:13-mc-712 (D.D.C. May 18, 2018), ECF No. 51.

The USAO argued that Petitioners' request for prospective relief was mooted by an August 15, 2017 Memorandum of Understanding ("MOU") that was negotiated and entered into between the USAO and the Clerk's Office.[3]  The MOU provides for the electronic filing of Section 2703(d), PR/TT, and SCA warrant applications, and requires the Clerk's Office to biannually release docket numbers and case captions for matters filed six to twelve months prior, except in matters related to "the non-disclosure of grand jury subpoenas."  *See* Mem. of Understanding: Electronic Filing of Certain Sealed Appls. and Orders  (Aug. 15,

---

[3] Petitioners had no involvement in negotiating the MOU.  Indeed, Petitioners did not learn of the MOU's existence until the USAO filed its response to Petitioners' Supplemental Memorandum.  *See* Reply in Supp. of Suppl. Mem. at 4, *In re Appl. of Jason Leopold*, No. 1:13-mc-712 (D.D.C. May 18, 2018), ECF No. 52.

2017), http://www.dcd.uscourts.gov/sites/ dcd/files/MOU_Electronic_

Filing_Pen_Registers.pdf.[4]

## D.     The District Court's Memorandum Opinion and Order

On February 26, 2018, the District Court issued a Memorandum Opinion

and Order granting in part and denying in part the petitions.  JA854-925.

The District Court held that the public has no First Amendment right of

access to any of the judicial records at issue.  JA886-96.  Specifically, the District

Court concluded that the first prong of the "experience and logic" test established

by the U.S. Supreme Court in *Press-Enterprise II*, 478 U.S. at 8-9, was not

satisfied because "no historical tradition of openness exists as to PR/TT, SCA

warrant, or [Section] 2703(d) materials, and such orders are too functionally unlike

search warrants in issuance, execution, or challenge procedures to justify the

latter's analytical substitution in evaluating the historical aspect of [Petitioners']

First Amendment right of access claim."  JA896.

As to Petitioners' common law claims, the District Court concluded that

PR/TT, SCA warrant, and Section 2703(d) materials are "judicial records."  JA897.

The District Court "identifie[d]," however, only a limited, "prospective right of

access" under the common law to "certain categories of information" about PR/TT,

SCA warrant, and Section 2703(d) matters filed with the District Court, "which

---

[4] Petitioners have concurrently requested that the Court take judicial notice of the publicly available MOU and a biannual report released by the Clerk's Office on October 16, 2018, pursuant to Federal Rule of Evidence 201.

will be disclosed on a periodic basis[.]" JA924. The scope of the "prospective right of access" recognized by the District Court mirrored the provisions of the MOU. *See* JA917, 921.

With respect to PR/TT, SCA warrant, and Section 2703(d) matters currently under seal, "[n]o retrospective right of access [was] recognized," by the District Court, "in consideration of the significant administrative burdens that retrospective disclosure would impose on the Clerk's Office and the USAO." JA925. In so holding, the District Court concluded that the "significant burdens" that "would attend recognizing a common law right of access" are cognizable as "particularized" interests under the controlling test for application of the common law right of access established by this Court in *Hubbard*. JA896.

Finally, the District Court denied Petitioners' request "for real-time reporting"—*i.e.* public access to docket sheets—for PR/TT, Section 2703(d), and SCA warrant matters on a moving-forward basis, holding that it "represent[ed] a significant shift in the [P]etitioners' position." JA920-21. The District Court did not otherwise address Petitioners' arguments that the constitutional and common law presumptions of access apply to docket sheets for PR/TT, Section 2703(d), and SCA warrant matters.

E.     **The District Court's Order on Petitioners' Motion for Reconsideration**

On March 23, 2018, Petitioners moved for reconsideration of the February 26, 2018 Order. JA12. Petitioners requested that the District Court reconsider its

application of the *Press-Enterprise II* test to each category of judicial records at issue, and its application of Supreme Court and this Court's precedent governing application of the common law right of access to judicial records. Pet'rs' Mot. for Recons. at 1-2, *In re Appl. of Jason Leopold*, No. 1:13-mc-712 (D.D.C. May 18, 2018), ECF No. 55.

Petitioners sought reconsideration in part because the District Court determined that the judicial records at issue failed the *Press-Enterprise II* "experience and logic" test on the ground that SCA warrants, Section 2703(d) orders, and PR/TT orders are analogous to subpoenas, rather than search warrants—an argument not asserted by the USAO. *Id*. at 3.

Petitioners also requested reconsideration of the District Court's interpretation of this Court's decision in *Hubbard*. The District Court held, under *Hubbard*, courts may consider "particularized privacy or other interests," in addition to the six factors identified in *Hubbard*, in determining whether the common law presumption of access applies to judicial records, and concluded that "administrative burden" was such a "particularized privacy or other interest[]"— another argument not asserted by the USAO. *See id*. at 19.

Petitioners further requested that the District Court give separate consideration to the public's First Amendment right of access to docket sheets, *id*. at 3, and specify the factual findings upon which it based its ruling that the common law right of access to judicial records only affords the public "periodic"

17

access to certain information concerning PR/TT, Section 2703(d), and SCA warrant matters on a moving-forward basis, *id.* at 19.

On August 16, 2018, the District Court issued an Opinion and Order denying Petitioners' motion for reconsideration. JA926-64. The District Court reaffirmed its "wholesale denial" of Petitioners' "First Amendment right of access claim," including "any aspect of [that] claim concerning docket information." JA950.

As to Petitioners' common law claims, the District Court reaffirmed its holding that the public has only a narrow common law right of access to certain limited information about PR/TT, SCA warrant, and Section 2703(d) matters on a moving-forward basis—but not to court docket sheets and other judicial records associated with those matters—and that this right is redressed by the release of such information to the public in the form of biannual reports. JA954. In doing so, the District Court's August 16, 2018 Order clarified its interpretation of *Hubbard* as "recogniz[ing]" that "a court may consider administrative burden in deciding whether to recognize any right of access" to judicial records as an initial matter. JA961. The District Court further clarified its holding that, with respect to sealed PR/TT, SCA warrant, and Section 2703(d) materials, no common law "right of access exists[.]" JA961; *see also id.* (stating that "a court may conclude that no asserted common law right of access exists in the first place where recognizing such right of access would impose undue administrative burdens").

18

## SUMMARY OF ARGUMENT

Public access to judicial records and proceedings is a centuries-old cornerstone of our judicial system and a prerequisite to public faith in the rule of law and the judiciary. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980).

By this action, Petitioners sought to enable public observation and oversight of three specific types of matters filed in the U.S. District Court for the District of Columbia that occupy a substantial portion of the dockets of its federal magistrate judges, yet are largely hidden from public view. The government files thousands of *ex parte* applications pursuant to the provisions of the PRA and the SCA in federal district courts each year. Judicial records filed in connection with PR/TT, Section 2703(d), and SCA warrant matters, as well as docket sheets associated with those matters, though presumptively open to the public under the First Amendment and common law, are routinely maintained under seal long after the investigations that prompted their filing have ended, without any compelling or countervailing interest necessitating such secrecy. As a result, the public has little to no information about the circumstances in which—or even how frequently—the executive branch uses these mechanisms to obtain electronic communications records, including the contents of emails, or the role played by federal courts in authorizing and overseeing their use. This endemic secrecy violates the public's

19

constitutional and common law rights of access to judicial records and obstructs the public's ability to observe the conduct of its courts and the executive branch.

During this litigation, Petitioners worked in good faith to identify ways to minimize any administrative burden associated with the relief sought by their petitions. JA97-106, 508-18; *see also* JA856. Concerned foremost with ensuring public access to PR/TT, Section 2703(d), and SCA warrant matters prospectively, Petitioners voluntarily narrowed the scope of the retrospective relief they requested. JA845-53. Petitioners ultimately sought the unsealing of judicial records, including court docket sheets, on a forward-looking basis only, and limited their request for retrospective relief to the disclosure of certain additional information concerning sealed PR/TT and Section 2703(d) applications previously filed by the USAO. *Id.* The District Court, rejecting application of the First Amendment and common law presumptions of access to the judicial records at issue, including docket sheets, rejected the relief sought by Petitioners. JA854-55, 926. It held that the public had a common law right only to certain, limited information about PR/TT, Section 2703(d), and SCA warrant matters, on a periodic basis. JA905-06.

The District Court erred as a matter of law in concluding that neither the First Amendment nor the common law presumption of access applies to judicial records filed in PR/TT, Section 2703(d), and SCA warrant matters post-investigation. With respect to the common law presumption, in particular, the

20

District Court erroneously interpreted *Hubbard* as permitting it to "conclude that no asserted common law right of access exists in the first place where recognizing such right of access would impose undue administrative burdens." JA961. The District Court also erred as a matter of law in holding that the public has no presumptive right of access under either the First Amendment or common law to docket sheets in SCA warrant, PR/TT, and Section 2703(d) matters on a moving-forward basis. Simply put, the narrow relief accorded by the District Court—namely, the periodic public release of limited information about SCA warrant, PR/TT, and Section 2703(d) matters—is incompatible with the constitutional and common law presumptions of access that, contrary to the District Court's rulings, apply fully here.

Accordingly, this Court should reverse and remand this matter to the District Court with instructions to evaluate the relief sought by Petitioners in accordance with the public's qualified rights of access and pursuant to correct legal standards. *See, e.g.*, *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 675 (D.C. Cir. 2017) ("*MetLife*") (holding that the common law right of access applied to the judicial records at issue and remanding to the district court to apply the *Hubbard* analysis to determine whether and to what extent the right was overcome).

Because the District Court misinterpreted the six-factor *Hubbard* test for determining whether the common law presumption of access to judicial records is overcome, this Court should also instruct the District Court on the proper

21

application of the *Hubbard* test to be applied on remand.  To the extent that the District Court on remand concludes that the constitutional and common law presumptions of access are overcome as to any aspect of the limited retrospective relief sought by Petitioners, or prospectively to SCA warrant, PR/TT, and Section 2703(d) materials post-investigation, any restrictions on public access must be narrowly tailored and supported by specific, on-the-record factual findings.

## ARGUMENT

This Court reviews de novo the legal conclusions of the District Court, including its determination as to whether a right of access exists under the First Amendment or at common law.  *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997); *MetLife*, 865 F.3d at 666.  The District Court's interpretation of controlling precedent is a question of law subject to de novo review.  *FTC. v. Church & Dwight Co.*, 665 F.3d 1312, 1315 (D.C. Cir. 2011) ("Whether the district court applied the correct standard . . . is a question of law, which we decide de novo." (citation omitted)).  Where a district court determines that records sought are judicial records to which the common law presumption of access applies, and weighs the factors set forth in *Hubbard* to determine whether the presumption is overcome, the district court's application of the *Hubbard* factors is reviewed for abuse of discretion.  *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) ("*Nat'l Children's Ctr.*").

**I.** **The Public has a First Amendment Right of Access to Judicial Records Filed in SCA Warrant, PR/TT, and Section 2703(d) Matters; the District Court's Holding to the Contrary Requires Reversal.**

"The First Amendment guarantees the press and the public access to aspects of court proceedings, including documents, 'if such access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct.'" *El-Sayegh*, 131 F.3d at 160 (quoting *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) ("*Robinson*"). Thus, when determining whether the First Amendment right of access applies to a particular judicial proceeding or record, courts look to two "complementary" and "related" considerations: "experience and logic." *Press-Enterprise II*, 478 U.S. at 8-9.

Though a "tradition of accessibility implies the favorable judgment of experience," *id.* at 8, there "can hardly be a historical tradition of access to the documents accompanying" a relatively new procedure, *El-Sayegh*, 131 F.3d at 161. Thus, as this Court has recognized, that "fact by itself is of course not dispositive." *Id.*; *see also Press-Enterprise II*, 478 U.S. at 10 n.3 (noting that some courts have recognized a First Amendment right to pretrial proceedings even though they found them to have "no historical counterpart"). In this Circuit, "[a] new procedure that substituted for an older one" is "evaluated by the tradition of access to the older procedure." *El-Sayegh*, 131 F.3d at 161; *see also In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1337 (D.C. Cir. 1985) ("*In re Reporters Committee*") (explaining that the inquiry is a "functional" one—

"whether information *of the sort at issue here*" was "traditionally open to public scrutiny") (emphasis in original)).

The District Court, while identifying the correct legal framework, JA878-79, erroneously applied it to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters. Applying the experience prong of the *Press-Enterprise II* analysis, the District Court correctly found that "the public has indeed had access to post-execution search warrant materials," but incorrectly concluded that the public's constitutional right of access to the judicial records at issue here should not be evaluated "in light of executed search warrants' historical tradition of openness." JA889, 895. Specifically, the District Court erred as a matter of law in concluding that SCA warrants, PR/TT orders, and Section 2703(d) orders "are too functionally unlike search warrants in issuance, execution, or challenge procedures to" consider the tradition of access to "post-execution search warrants" in determining whether the First Amendment right of access attaches, JA895-96. For the following reasons, a constitutional right of access applies to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters post-investigation.

### A. Experience Supports a Constitutional Right of Access to SCA Warrant Materials Post-Investigation.

#### 1. The Tradition of Access to Post-Investigation SCA Warrant Materials Must be Evaluated by the Tradition of Access to Other Post-Investigation Warrant Materials.

As the District Court correctly recognized, there is a historical tradition of public access to post-investigation warrant materials. JA889. Relying on that

historical tradition, courts in this and other circuits have repeatedly recognized that post-investigation warrant applications and related court filings are judicial records presumptively open to the public. *See In re Appl. of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 94 (D.D.C. 2008) ("*In re N.Y. Times*"); *Matter of the Appl. of WP Co.*, No. 16-mc-351 (BAH), 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016); *see also United States v. Loughner*, 769 F. Supp. 2d 1188, 1195 (D. Ariz. 2011); *United States v. Kott*, 380 F. Supp. 2d 1122, 1124-25 (C.D. Cal. 2004), *aff'd on other grounds*, 135 Fed. App'x 69 (9th Cir. 2005).

Though Petitioners seek only the prospective unsealing of applications and other filings in SCA warrant matters post-investigation, the Eighth Circuit has held that the First Amendment right of access applies not only to warrant materials post-investigation, but also to warrant materials in ongoing investigations. *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). The only circuit courts of appeals to have rejected a constitutional right of access to warrant materials have done so explicitly in the context of *ongoing* investigations. *See Times Mirror Co. v. United States,* 873 F.2d 1210, 1217-18 (9th Cir.1989) (finding no First Amendment right of access to warrant materials "while a pre-indictment investigation is still ongoing," and expressly reserving the question of whether such a right attaches "after the investigation is concluded or after indictments have been returned"); *Baltimore Sun Co. v. Goetz,* 886 F.2d 60,

62 (4th Cir. 1989) (holding that no First Amendment right of access attaches to affidavits supporting search warrants "in the interval between execution of the warrants and indictment," but that the common law presumption applies).

For purposes of evaluating the experience prong of *Press-Enterprise II*, the "tradition of access" to post-investigation search warrant material is applicable to post-investigation SCA warrant material. *El-Sayegh*, 131 F.3d at 161. An SCA warrant is a newer procedure that "substitute[s] for an older one"—namely, a traditional warrant—in a "new" technological context. *Id.*; *see also* S. Rep. No. 99-541, at 1 (1986) (stating that the "purpose" of the SCA is to "update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies"). In an age in which a person's "papers" include email and other electronic communications, an SCA warrant is functionally similar—if not functionally identical—to a traditional warrant: it allows government agents to inspect and/or rifle through those "papers." *Cf.* JA891 (quoting U.S. Const. amend. IV).

Indeed, under the statute's plain language, SCA warrants *are* Rule 41 warrants for which a showing of "probable cause" is required. 18 U.S.C. § 2703(a). And Congress's deliberate use of the term "warrant" in the SCA—a term that is "endowed with a legal lineage that is centuries old"—should not be ignored. *Matter of Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corp.*, 829 F.3d 197, 212 (2d Cir. 2016) (*"Microsoft I"*), *vacated and*

*remanded sub nom. United States v. Microsoft Corp.*, 138 S. Ct. 1186 (2018) (per curiam).[5]

While the District Court dismisses the SCA's "warrant" nomenclature as merely a "label," JA890, 934, the SCA recognizes warrants and subpoenas as "distinct legal instruments" and "does not use the terms interchangeably." *Microsoft I*, 829 F.3d at 214 (citing 18 U.S.C. § 2703(a), (b)(1)(A)). "[W]hen Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached" to that term. *FAA v. Cooper*, 566 U.S. 284, 292 (2012) (internal quotation marks and citations omitted). Indeed, the SCA uses the "warrant" requirement to provide a greater protection for a certain type of information, *see* 18 U.S.C. § 2703(a), and "subpoenas" to signify a lesser level of protection for a different category of information, *id.* § 2703(b)(1)(B). "The term 'subpoena,' therefore, stands separately in the statute, as in ordinary usage, from the term 'warrant.'" *Microsoft I*, 829 F.3d at 214.

The legislative history of the SCA further supports the conclusion that Congress intended an SCA warrant to substitute for a traditional warrant in the context of email and other electronic communications. *See, e.g.,* H.R. Rep. No. 99-647, at 19 (1986) ("Privacy cannot be left to depend solely on physical

---

[5] Following Congress's passage of the CLOUD Act, discussed below, the Second Circuit's opinion in *Microsoft I* was vacated by the Supreme Court. *See Microsoft Corp.*, 138 S. Ct. at 1187-88.

protection, or it will gradually erode as technology advances. Additional legal protection is necessary to ensure the continued vitality of the Fourth Amendment."); *id.* at 68 ("The Committee required the government to obtain a search warrant because it concluded that the contents of a message in storage [for fewer than 180 days] were protected by the Fourth Amendment."); *Microsoft I*, 829 F.3d at 219 (observing that "Congress sought to ensure that the protections traditionally afforded by the Fourth Amendment extended to the electronic forum" (citing H.R. Rep. No. 99-647, at 19)). Indeed, Congress recently amended the SCA to relax a requirement that typically applies to all warrants—a presumption against extraterritoriality. *See* Clarifying Lawful Overseas Use of Data ("CLOUD") Act, Pub. L. 115-141, Div. V, § 103, 132 Stat. 348 (2018). Courts must assume that "[w]hen Congress acts to amend a statute," it "intends its amendment to have real and substantial effect." *See Stone v. I.N.S.,* 514 U.S. 386, 397 (1995) (citation omitted). If Congress had intended an SCA warrant to function as a subpoena—which is presumed to apply to information abroad—it would not have needed to amend the SCA; the CLOUD Act would have been superfluous.

It is also notable that, in enacting the CLOUD Act, Congress did not clarify that SCA warrants are akin to subpoenas when it had the opportunity to do so. When Congress re-enacts a statute that has been judicially interpreted without changing that judicial interpretation, it is presumed that Congress knows and

"adopt[s] that interpretation." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) (citations omitted); *see also Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) (noting that, in a bankruptcy matter, "[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." (citation omitted)). Thus, the Court should presume that Congress was aware of judicial interpretations of the term "warrant" in the SCA when it enacted the CLOUD Act, and that it implicitly affirmed the Second Circuit's interpretation in *Microsoft I*—the only Court of Appeals decision to date interpreting the term.

The government's own practices are in accord. The government uses only SCA warrants supported by probable cause to obtain the content of communications, *see supra* at 9 and note 2, and it has assumed that SCA warrants are Rule 41 warrants for purposes of the Privacy Protection Act of 1980, 42 U.S.C. § 2000aa, which provides additional protection for newsgathering material from search and seizure pursuant to a warrant. *See, e.g.*, Aff. of Reginald B. Reyes ¶ 3, *Appl. for Search Warrant for E-mail Account [redacted]@gmail.com*, No. 1:10-mj-00291-AK (D.D.C. Nov. 7, 2011), ECF No. 20-1. Indeed, as noted above, the USAO did not argue in this litigation that SCA warrants are more akin to subpoenas than traditional warrants.

### 2. The District Court Incorrectly Held that SCA Warrants Are Not Functionally Analogous to Traditional Search Warrants.

In finding that SCA warrants are "functionally unlike traditional search warrants and more akin to subpoenas," the District Court pointed to "their method of execution and opportunity for pre-disclosure challenge." JA890. This was erroneous for three reasons.

*First*, as to the method of execution, the District Court found that an SCA warrant is more analogous to a subpoena because it "directs" its recipient—a third-party electronic service provider—to "'comply' with a 'demand' for information," and does not subject the recipient to "the immediacy and intrusiveness of a search and seizure conducted pursuant to a warrant." JA891. However, "the law of warrants has long contemplated that a private party may be required to participate in the lawful search or seizure of items belonging to the target of an investigation," and that "the Fourth Amendment's warrant clause applies in full force to the private party's actions." *Microsoft I*, 829 F.3d at 214 (citing cases). An SCA warrant, which directs a service provider to turn over a subscriber's communications, "fit[s] comfortably within this scheme." *Id*.

While it makes practical sense for the government to involve a third-party service provider with access to sought-after communications of one of its subscribers in the execution of an SCA warrant, the service provider is not, as the District Court suggested, the "target" of such a warrant in any real sense, JA892;

unlike the recipient of a subpoena who typically owns the information to be collected, the service provider is merely the custodian of the subscriber's sought-after communications. *See United States v. Miller*, 425 U.S. 435, 440 (1976) (distinguishing "business records," which are created by banks using the information gathered in the course of business, from "private papers," which are solely owned by its customers). Indeed, Congress presumably required a showing of "probable cause" for an SCA warrant because subscribers maintain a reasonable expectation of privacy in those communications. *Id.* at 442; *see also Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) (holding that the government must obtain a warrant supported by probable cause before acquiring an individual's cell-site location information pursuant to a Section 2703(d) order, and noting that "this Court has never held that the Government may subpoena third parties for records in which the suspect has a reasonable expectation of privacy").

Moreover, while an SCA warrant may not typically subject its recipient to "the immediacy and intrusiveness of a search and seizure conducted pursuant to a warrant," JA891, a government agent's physical presence is not precluded in the execution of an SCA warrant. *See* Transcript of Oral Argument at 4, *Microsoft Corp.*, 138 S.Ct. 1186 (No. 17-2) (Justice Sotomayor observing during oral argument that the SCA "provides for a warrant that presumably would let the government" enter a service provider's facility and conduct a physical search). Put simply, that execution of an SCA warrant does not usually accompany an

"unannounced and unanticipated physical intrusion," does not make an SCA warrant any less a warrant.  JA890.

*Second*, the District Court's reliance on an SCA warrant recipient's opportunity for pre-execution challenge is also misguided.  It is the service provider—not the subscriber—who has an opportunity to move to quash an SCA warrant on limited grounds pre-execution, and a service provider's "good faith reliance" on a court order is "a complete defense" to any damages action.  *See* 18 U.S.C. § 2707(e).  Even assuming service providers have "legal incentives to move to quash SCA warrants that appear defective," as the District Court stated, JA940, it is "extremely unlikely" that the affected subscriber will even learn of the warrant application, which is submitted *ex parte*, without notice.  *See* Stephen W. Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harv. L. & Pol'y Rev., 313, 315, 327 (2012); JA940 (quoting 18 U.S.C. § 2707(e)(1)).

*Third*, the District Court's focus on these two procedural features of SCA warrants—the method of execution and opportunity for pre-execution challenge—is untethered to the purpose of the *Press-Enterprise II* experience inquiry.  Though the District Court stated that it was focusing on the "degree of functional similarity," rather than "looking to labels," in deciding "whether the history of one judicial procedure may be substituted for another," JA890, it based its analysis entirely on two factors that have no bearing on "whether information *of the sort at*

*issue here*" has been "traditionally open to public scrutiny." *In re Reporters Committee*, 773 F.2d at 1337 (emphasis in original).

As explained in *El-Sayegh*, this Court in *Robinson* recognized that the First Amendment right of access attaches to "a plea agreement, once it has . . . culminated in a guilty plea"; in evaluating the experience prong of *Press-Enterprise II*, the Court in *Robinson* looked to the "public right of access to trials," which is "undisputed in both its importance and its historical pedigree," because "an agreement that is accepted by the court, and on which a guilty plea is entered, substitutes for the entire trial." *El-Sayegh*, 131 F.3d 160-61 (citing *Robinson*, 935 F.2d at 283, 288). This Court did not compare the (very different) procedural features of plea proceedings with those of criminal trials to determine that it made "sense to treat a completed plea agreement as equivalent to a trial, and therefore as an item that 'historically has been available'" for purposes of the public's right of access. *El-Sayegh*, 131 F.3d at 161; *accord Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1465 (9th Cir. 1990) (explaining that "[j]ust as there exists a first amendment right of access in the context of criminal trials, . . . it should exist in the context of the means by which most criminal prosecutions are resolved, the plea agreement" (citations omitted)).

Here, too, an SCA warrant is a newer "procedure" that "substitute[s] for an older one"—a traditional search warrant—and serves the same function. *El-Sayegh*, 131 F.3d at 161. Accordingly, the public's constitutional right of access to

SCA warrant materials should be evaluated by the tradition of access to other warrant materials, *id*., regardless of whether SCA warrant procedures are identical in all respects to traditional search warrant procedures.

> B.    **Experience Supports a Constitutional Right of Access to PR/TT and Section 2703(d) Materials.**

PR/TT and Section 2703(d) materials are also functionally equivalent to warrant materials and should be evaluated by the same tradition of post-investigation access. *Id*. The District Court erroneously concluded that "Section 2703(d) and PR/TT orders are even less analogous to traditional search warrants" than SCA warrants because they "differ in execution and applicable legal standard." JA895.

For the reasons stated above, that the method of execution of PR/TT and Section 2703(d) orders involves third parties does not make them functionally unlike traditional warrants. In addition, the "applicable legal standard"—which the District Court, notably, did not consider with respect to SCA warrants, JA890-895—is not determinative of "whether information *of the sort at issue here*"—court orders and other judicial records concerning government seizure of private electronic communication records—have been "traditionally open to public scrutiny." *In re Reporters Committee*, 773 F.2d at 137 (emphasis in original). And, indeed, the District Court's assumption that all information sought by the government pursuant to Section 2703(d) properly can be obtained on a lower-than-

"probable cause" showing is not well-founded.  The Supreme Court recently held that an individual's cell-site location records that were sought by the government under Section 2703(d) cannot be obtained by a mechanism other than a warrant supported by probable cause.  *See Carpenter*, 138 S. Ct. at 2221.

Because Section 2703(d) and PR/TT orders, like warrants, judicially authorize the government to invade the privacy of a subscriber, and provide no judicial process for a subscriber to challenge such an order pre-execution, the tradition of openness of warrant materials post-investigation is applicable.  Further, as to the Section 2703(d) and PR/TT orders themselves, they are court orders to which the public right of access has traditionally applied, *Nat'l Children's Ctr.*, 98 F.3d at 1409—"an appropriate consideration to take into account when examining the scope of the First Amendment."  *In re N.Y. Times*, 585 F. Supp. 2d at 89 (citing *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 92 (2d Cir. 2004) ("*Pellegrino*")).

Though no federal court of appeals to date has addressed the public's constitutional right of access to applications, orders, and other filings in SCA warrant or PR/TT matters, the Fourth Circuit has considered the public's right of access to Section 2703(d) materials at the "pre-grand jury phase of an ongoing criminal investigation," and concluded that, while the common law right of access applied, the First Amendment right of access did not.  *In re Appl. of United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 286-87 (4th

Cir. 2013) ("*Appelbaum*"). The Fourth Circuit's holding in *Appelbaum* as to the application of the First Amendment right of access, however, is distinguishable for two reasons. *First*, the petitioners in *Appelbaum* "concede[d] that there is no long tradition of access specifically for [Section] 2703(d) orders, given that the SCA was enacted in 1986." *Id.* at 291. As a result, the Fourth Circuit did not grapple with the "experience" prong, which, under this Court's precedent, should be evaluated by the history of access to traditional search warrant materials. *El-Sayegh*, 131 F.3d at 161. *Second*, unlike this case, which involves access to judicial records post-investigation, the Fourth Circuit considered only application of the First Amendment right of access to Section 2703(d) materials at the "pre-grand jury phase of an ongoing criminal investigation." *Appelbaum*, 707 F.3d at 286, 292. Accordingly, the Fourth Circuit's rejection of a First Amendment right of access to Section 2703(d) materials provides little guidance.

C. **Public Access to SCA Warrant, PR/TT, and Section 2703(d) Materials Post-Investigation Would Play a Significant Positive Role in the Functioning of the Criminal Justice System.**

Having concluded that the first prong of the *Press-Enterprise II* analysis was not satisfied, the District Court found "unnecessary any consideration of the claim's other elements." JA896. This Court, reviewing de novo the District Court's holding that the First Amendment right of access does not attach to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters post-investigation, should conclude that both "complementary" and "related"

36

considerations identified in *Press Enterprise II*, 478 U.S. at 8–9—experience and logic—support a constitutional right of access.

As is true of post-investigation warrant materials generally, public access to SCA warrant, PR/TT, and Section 2703(d) materials would "play[] a significant positive role in the functioning of the criminal justice system, at least at the post-investigation stage." *In re N.Y. Times*, 585 F. Supp. 2d at 90. Access will foster trust in the system and "serve[] as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Id*.

Moreover, transparency will bring to light specific matters that raise policy and other concerns. As noted above, in 2013, it came to light that in 2010 the FBI had obtained an SCA warrant requiring Google to provide it with the contents of emails from the personal email account of a Fox News reporter, James Rosen, in connection with a "leak" investigation. *See supra* at 11. Unsealing of the Rosen SCA warrant materials—including an affidavit in which an FBI Special Agent averred that there was "probable cause to believe" that Rosen, by engaging with a source, had violated federal criminal law as "an aider and abettor and/or co-conspirator[,]" Aff. of Reginald B. Reyes ¶¶ 4-5, 39-40, *Appl. for Search Warrant for E-mail Account [redacted]@gmail.com*, No. 1:10-mj-00291-AK (D.D.C. Nov. 7, 2011)—prompted an outcry from the press and the public. *See* Marimow, *Justice Department's scrutiny of Fox News reporter James Rosen in leak case draws fire*. In the wake of the Rosen incident, the Department of Justice, facing

intense public pressure, revised the internal guidelines that govern the collection of records or information from members of the news media in 2014 and 2015 to strengthen protections for journalists. *See* 28 C.F.R. § 50.10.

SCA warrant, Section 2703(d), and PR/TT materials are "routinely maintained under seal" perpetually, JA887, not due to Congressional intent or the "favorable judgment of experience," *Press-Enterprise II*, 478 U.S. at 8, but because of default practices. As the District Court acknowledged, the SCA provides "no . . . default sealing or nondisclosure provisions," whatsoever. JA887. However, the government, in practice, "has always been able to restrict access to SCA warrants . . . by requesting a sealing order, regardless of the statutory default." JA887–88. And "temporary sealing orders almost always become permanent" by default, regardless of whether continued secrecy serves any purpose. Smith, *Gagged, Sealed & Delivered* at 325. As to PR/TT materials, unsealing is contemplated by the very text of the PRA, which states that the order authorizing the use of a PR/TT device remain sealed "until otherwise ordered by the court," 18 U.S.C. § 3123(d), but, in practice, sealing is rarely revisited.

In sum, public access to SCA warrant, Section 2703(d), and PR/TT materials post-investigation would "play[] a significant positive role in the functioning" of a process that authorizes law enforcement to seize the contents of private email communications, including those of journalists—a power that should be carefully overseen by district courts whose actions are, in turn, subject to public oversight.

*Press-Enterprise II*, 478 U.S. at 8.  As the government and the courts continue to interpret the SCA, for example, to apply to new and evolving technologies and changing circumstances, *see, e.g.*, *Carpenter*, 138 S. Ct. 2206; *Microsoft Corp.*, 138 S. Ct. 1186, public access to SCA warrant and Section 2703(d) materials, at least in the post-investigation context, will provide much-needed transparency and accountability with respect to the legal reasoning and statutory interpretations that justify the use of these tools, and will enable magistrate judges to more effectively perform their oversight function.  *See* Smith, *Gagged, Sealed & Delivered* at 315 (explaining that, due to the lack of transparency, "magistrate judges are given no guidance in how to interpret or apply ECPA's complex provisions, and law enforcement is given free rein to push its surveillance power to whatever limits it chooses to recognize").

In addition, public access is particularly valuable here because the judicial records at issue pertain to the exercise of executive branch agencies' surveillance authority.  "[T]he public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."  *Smith v. United States Dist. Court for S. Distr. of Ill.*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)); *see also United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) ("[C]ourts must impede scrutiny of the exercise of [judicial] judgment only in the rarest of

circumstances," especially "when a judicial decision accedes to the requests of a coordinate branch").

**II.  The Public's First Amendment Right of Access to Judicial Records Filed in SCA Warrant, PR/TT, and Section 2703(d) Matters is Overcome Only If, and to the Extent that, a Compelling Interest Necessitates Sealing.**

Once a constitutional right of access attaches to a particular court record, the presumption of openness may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 9 (citation omitted).  Because the First Amendment right of access applies to judicial records filed in SCA warrant, PR/TT and Section 2703(d) matters, the government has the burden of demonstrating a compelling interest that necessitates sealing, and the court is required to make specific findings that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011) (quoting *Robinson*, 935 F.2d at 290).

In evaluating Petitioners' request for prospective unsealing of judicial records filed in future SCA warrant, Section 2703(d), and PR/TT matters, and their request for limited retrospective relief, the District Court did not make specific findings that the First Amendment right of access had been overcome because it

40

held that the constitutional right did not apply in the first instance.  JA950.  Though the District Court stated generally that "[p]ublic access to the judicial records at issue would raise real risks of disclosing personally identifiable information that could damage the reputations of persons investigated but never charged, jeopardize the safety of cooperating defendants and witnesses, and even discourage potential cooperators in the future,"  JA948, such a generalized invocation of law enforcement interests does not meet the exacting standard set by this Court's precedents.  *Brice*, 649 F.3d at 796; *Robinson*, 935 F.2d at 290.  Moreover, none of these broad law enforcement interests apply to the predominantly prospective relief sought by Petitioners.  Indeed, the USAO did not "contend that disclosure [as requested by Petitioners] would impede an ongoing criminal investigation or reveal information that would impinge on personal privacy."  JA896.

To the extent that District Court on remand concludes that the constitutional presumption of access is overcome as to any aspect of the limited retrospective relief sought by Petitioners, or on a prospective basis, the District Court's restrictions on public access must be narrowly tailored and supported by specific, on-the-record factual findings.

III.    **The Public has a Common Law Right of Access to Judicial Records Filed in SCA Warrant, PR/TT, and Section 2703(d) Matters; the District Court's Holding to the Contrary Requires Reversal.**

The Supreme Court and this Court have long recognized the public's "right to inspect and copy public records and documents, including judicial records and

documents." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978); *see also Hubbard*, 650 F.2d at 314-15. This common law right "antedates the Constitution," *El-Sayegh*, 131 F.3d at 161, and is "fundamental to a democratic state," *Hubbard*, 650 F.2d at 315 n.79.

Unlike the constitutional right of access, which attaches only to certain judicial proceedings and records, *El-Sayegh*, 131 F.3d at 160, the common law's "strong presumption in favor of public access," *Hubbard*, 650 F.2d at 317, applies to *all* "judicial records," though it "may be outweighed in certain cases by competing interests," *MetLife*, 865 F.3d at 665. To determine whether countervailing factors overcome the common law presumption, this Court in *Hubbard* "crafted a six-factor test to balance the interests presented by a given case." *Id*. (citing *Hubbard*, 650 F.2d at 317-22).

Though correctly recognizing that applications, orders, and other documents filed in SCA warrant, PR/TT, and Section 2703(d) matters are "judicial records," the District Court nonetheless held that no common law right of access applies to them. JA961. The District Court erred as a matter of law in so holding, and in "recogniz[ing]" only a limited, prospective common law right of access to certain narrow categories of information about SCA warrant, PR/TT, and Section 2703(d) matters to be released on a "periodic" basis, JA924. In particular, the District Court erred by interpreting *Hubbard* as permitting it to consider administrative burden as a dispositive factor "in deciding whether to recognize any [common law]

right of access in the first place." JA961. As a result of these legal errors, the

limited prospective relief accorded by the District Court fails to comply with the

common law presumption that judicial records be open to public inspection.

### A. PR/TT, SCA Warrant, and Section 2703(d) Materials are Judicial Records to which the Common Law Right of Access Attaches.

"[W]hether a document must be disclosed pursuant to the common law right

of access involves a two-step inquiry." *Wash. Legal Found. v. U.S. Sentencing*

*Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996). *First*, the court must determine

whether the document is a judicial record to which the common law right attaches.

*Id.* *Second*, "the court should proceed to balance the government's interest in

keeping the document secret against the public's interest in disclosure." *Id.*

"[N]ot all documents filed with courts are judicial records." *MetLife*, 865

F.3d at 666 (quotation omitted). Rather, "what makes a document a judicial record

and subjects it to the common law right of access is the role it plays in the

adjudicatory process." *El-Sayegh*, 131 F.3d at 163. For example, a document filed

with the court qualifies as a judicial record if it "can affect a court's

decisionmaking process" or is a document "upon which the court must base its

decision." *MetLife*, 865 F.3d at 667.

As the District Court correctly recognized, applications, orders, and related

documents filed in SCA warrant, PR/TT, and Section 2703(d) matters are

"indisputably" judicial records, JA886, because they play a central role in the

43

"adjudicatory process." *El-Sayegh*, 131 F.3d at 163.  A magistrate judge's decision to issue an SCA warrant or grant a request for a PR/TT or Section 2703(d) order is based solely on the contents of the *ex parte* application and supporting documents filed by the government, making those documents central to the court's decisionmaking process.  *See MetLife*, 865 F.3d at 667.  The decisions ultimately made by a court to grant or deny such requests also plainly meet this standard.  *Id*. at 668.  Indeed, Section 2703(d) and PR/TT orders are, if nothing else, court orders to which the public's right of access has traditionally applied.  *See Nat'l Children's Ctr.*, 98 F.3d at 1409 ("A court's decrees, its judgments, its orders, are the quintessential business of the public's institutions.").

As detailed above, *supra* Section I.A.1., warrant applications and related materials are judicial records presumptively open to the public post-investigation. Although this Court has not expressly addressed the issue, other federal courts of appeals have consistently determined that warrant materials are judicial records to which *at least* the common law right of access applies.  *See In re Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012) (recognizing common law right of access to search warrant proceedings); *Goetz*, 886 F.2d at 62 (recognizing common law right of access to search warrant materials); *In re EyeCare Physicians of America*, 100 F.3d 514, 517-18 (7th Cir. 1996) (same);  *United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (same, for search warrant materials from closed investigations); *In re Appl. of*

*Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (same). Some courts have held, specifically, that because affidavits filed in support of search warrants are "central to a court's probable cause determination" the common law presumption is "entitled to great weight." *United States v. Wells Fargo Bank Account No. 7986104185*, 643 F. Supp. 2d 577, 583-84 (S.D.N.Y. 2009) (citing *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)); *see also In re Sealed Search Warrant, No. 04-M370 (DRH)*, 2006 WL 3690639, at *3 (N.D.N.Y. Dec. 11, 2006) (holding that the presumption of access to search warrant materials "carries the maximum possible weight").

No federal court of appeals has addressed the public's common law right of access to judicial records filed in SCA warrant or PR/TT matters under either the First Amendment or common law. As discussed above, *supra* Section I.B., the Fourth Circuit in 2013 held that Section 2703(d) materials at the "pre-grand jury phase of an ongoing criminal investigation" were judicial records to which the common law right applied. *Appelbaum*, 707 F.3d at 286, 291. Though the Fourth Circuit found that the presumption of access was overcome for reasons not at issue here—because the sealed materials contained nonpublic facts about an ongoing criminal investigation—it made clear that the petitioners were "not forever barred from access" to the Section 2703(d) materials they sought "because at some point in the future, the Government's interest in sealing may no longer outweigh the common law presumption of access." *Id.* at 295.

In sum, because documents filed in SCA warrant, PR/TT, and Section 2703(d) matters are "judicial records," the "strong" common law presumption of access applies, which can only be overcome by a showing that "competing interests" compel a "conclu[sion] that justice [] requires" sealing. *MetLife*, 865 F.3d at 666.

**B.  The District Court Erroneously Held That the Common Law Right of Access Does Not Apply to Judicial Records Filed in SCA Warrant, PR/TT, and Section 2703(d) Matters.**

Once the District Court determined that documents filed in SCA warrant, PR/TT, and Section 2703(d) matters are "judicial records," JA886, it necessarily should have recognized that there is a "strong presumption" of access to those documents and "proceed[ed] to balance the government's interest in keeping the document[s] secret against the public's interest in disclosure," *Wash. Legal Found.*, 89 F.3d at 902, using the six-factor test set forth in *Hubbard*. *See MetLife*, 865 F.3d at 663. The District Court, however, conflated this two-step inquiry by interpreting *Hubbard* as permitting it to consider a single factor never identified by this Court—administrative burden—as dispositive "in deciding *whether to recognize any right of access in the first place*, not that such a right of access exists but nonetheless gives way to countervailing considerations." JA961 (emphasis added).[6] Applying this erroneous interpretation of *Hubbard*, the District Court

---

[6] Petitioners initially understood the District Court's February 26, 2018 Order as holding that the common law right of access attached to the judicial records at

46

held that the common law right of access does not apply to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters post-investigation.

Under this Court's precedent, the "starting point . . . is a 'strong presumption in favor of public access'" to judicial records like those at issue here. *Nat'l Children's Ctr.*, 98 F.3d at 1409 (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)). Thus, the District Court should have evaluated Petitioners' claims for prospective and limited retrospective relief by starting with the strong presumption that such records are open to public scrutiny. *See Nixon*, 435 U.S. at 598. The District Court's categorical denial of the very existence of a presumptive right of access to these judicial records is unsupported by case law governing the application of the common law right in this or any other federal jurisdiction and requires reversal.

**C.      The Limited Prospective Relief Accorded by the District Court is Incompatible with the Strong Common Law Presumption that Judicial Records Are Open to Public Inspection.**

Because it held that there is no common law right of access to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters post-investigation, JA961, the District Court failed to consider the relief requested by

---

issue but was overcome due to the District Court's application of "administrative burden" as a *Hubbard* factor. *See* Pet'rs' Mot. for Recons. at 20, *In re Appl. of Jason Leopold*, No. 1:13-mc-712 (D.D.C. May 18, 2018), ECF No. 55. In its August 16, 2018 Order, however, the District Court explicitly corrected what it deemed to be Petitioners' misunderstanding of its prior ruling. JA961.

Petitioners from the proper starting point:  the strong, presumptive common law right to inspect judicial records.  *Hubbard*, 650 F.2d at 317.  As a result, the District Court found the public was entitled only to certain narrow categories of information about SCA warrant, PR/TT, and Section 2703(d) matters, prospectively, on a "periodic" basis.  This relief is inconsistent with the public's presumptive right to inspect the underlying judicial records themselves.  Further, the publication of biannual reports by the Clerk's Office containing certain information regarding SCA warrant, PR/TT, and Section 2703(d) matters, JA924, is inconsistent with Supreme Court case law emphasizing that the public's right of access to judicial proceedings and records is a contemporaneous one.

Courts have repeatedly maintained that proper oversight of the judiciary is tied to the public's "general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon*, 435 U.S. at 597.  This common law right is a right to inspect judicial records themselves, not merely information derived from those judicial records.  *See Amodeo*, 71 F.3d at 1048 (explaining that public monitoring of the courts "is not possible without access to . . . documents that are used in the performance of Article III functions").  The District Court's publication of biannual reports containing limited information about SCA warrant, Section 2703(d), and PR/TT matters filed by the USAO does not address the public's common law right of access to "inspect" the underlying judicial records filed in those matters post-investigation.  *Nixon*, 435 U.S. at 597.

Further, where the public has a right of access to judicial records that is not overcome, public access ought to be immediate and contemporaneous. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (discussing the "importance of immediate access where a right to access is found"); *see also Richmond Newspapers, Inc.*, 448 U.S. 555 at 592 (Brennan, J., concurring) ("contemporaneous review in the forum of public opinion is an effective restraint on the possible abuse of judicial power."). The biannual disclosure of limited information about SCA warrant, PR/TT, and Section 2703(d) matters is inconsistent with this tenet. Indeed, as shown by the District Court's most recent biannual report, the release of that limited information is delayed, in some cases, as much as one year. *See* Standing Order and Attachment (D.D.C. Oct. 2, 2018), https://www.dcd.uscourts.gov/sites/dcd/files/Standing_Order_Attachment_101718.pdf.

In sum, the District Court erred as a matter of law in holding that the public has no common law right of access to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters post-investigation. The limited, prospective relief accorded by the District Court, which is premised on that erroneous legal conclusion, is inconsistent with the very nature of the common law presumption that judicial records are open to public inspection absent some countervailing interest requiring secrecy. For these reasons, the District Court's judgment should be reversed.

**IV.    The District Court's Rulings Misinterpret and Misapply *Hubbard*.**

In determining whether the common law right of access to judicial records is overcome by countervailing interests, courts in this Circuit apply the six-factor test set forth in *Hubbard*, 650 F.2d at 317-22. *See also, MetLife*, 865 F.3d at 666 (noting that the "*Hubbard* test has consistently served as our lodestar because it ensures that we fully account for the various public and private interests at stake"). "Specifically," under *Hubbard*, "when a court is presented with a motion to seal or unseal, it should weigh":

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*MetLife*, 865 F.3d at 665.

Here, as set forth above, the District Court misconstrued *Hubbard* as allowing it to consider a factor never identified by the Court—administrative burden—as dispositive in deciding whether "to recognize any [common law] right of access in the first place, not that such a right of access exists but nonetheless gives way to countervailing considerations." JA961.  For the reasons set forth above, the District Court's conclusion that the common law right of access does not apply to judicial records filed in SCA warrant, Section 2703(d), and PR/TT matters, alone, requires reversal.  Because the District Court's rulings also reflect

an erroneous interpretation of the six-factor *Hubbard* test established by this Court for determining whether the common law presumption of access to judicial records is overcome in a given case, this Court should also instruct the District Court on the proper application of the *Hubbard* test to be applied on remand.

**A. The District Court Erred as a Matter of Law by Construing the *Hubbard* Test as Calling for the Court to Consider the Administrative Burden of Public Access to Judicial Records.**

The District Court's conclusion that *Hubbard* contemplates administrative burden as a "particularized privacy or other interest[] that" a "defendant may assert" to oppose unsealing, JA880, is, itself, legal error. *Hubbard* itself makes clear that to the extent courts can consider "particularized privacy or other interests" beyond the six enumerated factors identified by the Court when determining whether the common law right of access has been overcome, those interests must be connected to the *content* of the records at issue. *See Hubbard*, 650 F.2d at 323 n.116 (explaining that the "potential for prejudice inherent in the documents' release must be assessed with specific reference to the documents' contents"). Simply put, nothing in *Hubbard* suggests that administrative burden falls within the scope of the "particularized privacy or other interests" contemplated by the Court.

Moreover, requiring the government to unseal or provide access to judicial records to which the public has a constitutional or common law right of access is consistent with its obligations to the public and therefore cannot, by itself, be

51

deemed a "burden." Indeed, courts have routinely rejected arguments that burden on the government (or other parties) is a countervailing interest sufficient to overcome the public's right of access. *See, e.g.*, *United States v. Camick*, 796 F.3d 1206, 1213 n.5 (10th Cir. 2005), *cert. denied*, 136 S. Ct. 601 (2015) (finding the government's argument that "review or redaction would be unduly burdensome and costly" "overlook[ed] [the] presumption in favor of the common-law right of access to judicial records" (internal quotations marks and citation omitted)); *Meyer v. UNUM Life Ins. Co. of Am.*, 12-cv-1134-KHV, 2014 WL 1095743, at *2 (D. Kan. Mar. 19, 2014) ("The task of redacting does not rise to a significant interest that outweighs the public's right of access.").

Further, when federal appellate courts have been called upon to address systemic denials of the public's right of access to judicial records they have done so notwithstanding associated administrative burdens. *See Pellegrino*, 380 F.3d at 86, 102 (finding a constitutional right of access to sealed docket sheets for "what appeared to be thousands of cases" spanning 38 years); *see also United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (rejecting the government's argument that it "should avoid binding the district court to any formal procedure that is unduly burdensome," and requiring that docket sheets be made public).

In reaching its conclusion that administrative burden is a proper—indeed, in its view, dispositive—consideration under *Hubbard*, JA961, the District Court ignored these decisions. Instead, it relied on *In re Sealed Case*, in which this Court

52

declined to require the creation of a public docket for materials filed in connection with ancillary grand jury proceedings.  JA913 (citing to *In re Sealed Case*, 199 F.3d 522, 524, 526 (D.C. Cir. 2000)).  This reliance is misplaced.  This Court's analysis in *In re Sealed Case* was expressly limited to the "unique" context of grand jury proceedings.  199 F.3d at 526 (explaining that "[u]nlike typical judicial proceedings, grand jury proceedings and related matters operate under a strong presumption of secrecy").  Indeed, the Court expressly acknowledged that "courts have upheld rights of public docketing and access in other situations not involving grand jury matters."  *Id.* at 525 (collecting cases).

Beyond *In re Sealed Case*, the District Court stated that "the only judicial decision of which [it was] aware to have confronted an analogously broad request for unsealing and/or disclosure of sealed criminal matters denied the request on the ground that 'the scope of the relief sought . . . is overbroad' and 'not practicable[.]'"  JA912-13 (citing Order Den. Mot. Unseal Docs & Publicly Docket Ct. Rs. at 1-3, *In re Jennifer Granick & Riana Pfefferkorn*, No. 16-mc-80206-KAW (N.D. Cal. June 23, 2017) ("*Granick* Order")).  This district court decision is not binding on this Court.  And, in any event, the District Court misread the *Granick* Order.  The reasons cited therein for denying the petitioners' motion as "overbroad" were (1) the risk of unsealing information that should properly remain under seal in ongoing investigations, and (2) the court's perceived lack of authority to "reverse the sealing orders of other judges in [the] district."  *Granick* Order at 2-

53

3. The *Granick* Order did not address administrative burden, let alone "illustrate[]" that a court properly may consider the breadth of access to judicial records . . . and the burden that would attend compliance . . . in determining the scope of disclosure to grant." JA913.

If courts are permitted to deny public access to judicial records that are presumptively open based solely upon the extent of sealing being challenged, it will permit violations of the public's common law right so long as those violations are broad and systemic enough to be administratively challenging to remedy. And it will shift the burden to members of the public to identify the precise amount of access to judicial records that a court will not deem too administratively burdensome to grant. Indeed, because administrative burden is conceivably a factor in *any* case where a member of the public seeks access to sealed judicial records, a rule permitting burden to overcome the common law right would turn the common law's strong presumption *in favor* of openness on its head.

Because the District Court's rulings reflect a misinterpretation of the six-factor test established in *Hubbard*, this Court should clarify that administrative burden is not a factor to be weighed by the District Court on remand.

**B.    Even if a Court May Properly Consider Administrative Burden Under *Hubbard*, it is Not Dispositive.**

Even assuming that administrative burden is an appropriate, additional "particularized" interest for courts to consider when applying the *Hubbard* test, for

the District Court to determine on remand that administrative burden singly outweighs the enumerated *Hubbard* factors would be an abuse of discretion.

As an initial matter, the USAO never argued that the common law right of access to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters should be outweighed by considerations of administrative burden; the USAO conceded this fact in its opposition to Petitioners' motion for reconsideration. *See* USAO Opp. to Pet'rs' Mot. for Recons. at 15, *In re Appl. of Jason Leopold*, No. 1:13-mc-712 (D.D.C. May 18, 2018), ECF No. 58. For that reason alone, administrative burden is not a "particularized" reason that "defendants [] assert[ed]" as a basis for sealing. *Hubbard*, 650 F.2d at 323.

Further, though the District Court limited its analysis of Petitioners' request for prospective relief to the scope of the narrow common law right of access it recognized—*i.e.*, to limited information about SCA warrant, PR/TT, and Section 2703(d) matters on a periodic basis—it concluded that five of the six enumerated *Hubbard* factors weighed *in favor* of prospective disclosure, including the "single most important element," *Hubbard*, 650 F.2d at 321, the purpose for which the documents were introduced. JA905 (finding that the need for public access to the documents at issue, the fact of objection and objector's identity, the strength of any property and privacy interests asserted, the possibility of prejudice, and the purposes for which the documents were introduced all weighed in favor of disclosure). The District Court found that one factor—the extent of previous

access to the documents—had "limited applicability," and therefore counted against disclosure. *Id*. With respect to the limited retrospective relief sought by Petitioners, the District Court likewise found that "*Hubbard*'s generalized factors weigh in favor of retrospective access . . . for essentially the same reasons." JA906.

Given these findings, even assuming that administrative burden is an appropriate factor for the District Court to consider on remand when applying the *Hubbard* test, it would be an abuse of discretion for the District Court to conclude that notwithstanding that "*Hubbard*'s generalized factors weigh favorably toward" access, JA907, the administrative burden of unsealing outweighs the presumption of access to judicial records filed in SCA warrant, Section 2703(d), and PR/TT matters post-investigation. *See Nat'l Children's Ctr.*, 98 F.3d at 1410 (finding that the district court abused its discretion in sealing a consent decree where "only one *Hubbard* factor counsels in favor of sealing" and "there are several factors in favor of not sealing" including "the fact that the government is a party to the case, and the need for public access").

Accordingly, to the extent this Court concludes that administrative burden is an appropriate factor to be weighed by the District Court on remand, it should instruct the District Court that administrative burden is not a dispositive factor.

**C.    The District Court Must Make Specific, On-the-Record Findings to Support Any Conclusion that the Common Law Right of Access is Overcome.**

If a court weighing the *Hubbard* factors determines that the common law presumption of access is overcome, it must make specific, on-the-record factual findings demonstrating that the public's interest in access is outweighed by countervailing interests.  *Hubbard*, 650 F.2d at 317.

In concluding that no common law right of access attaches to judicial records filed in SCA warrant, PR/TT, and Section 2703(d) matters in the first instance, the District Court focused primarily on the limited retrospective relief sought by Petitioners.  *See* JA962-64.  As to the prospective relief sought, the District Court noted only that, with respect to Petitioners' request that any SCA warrant, PR/TT, or Section 2703(d) matter still under seal 180 days after the date it was initially filed be subject to an order to show cause why it should not be unsealed, the "adoption of 'a system that calls for the Court to issue show cause orders in each of the hundreds of PR/TT and SCA matters that are filed each year would be labor-intensive for the Clerk's Office and would require the USAO[] to expend resources to review each matter and respond to each show cause order.'"  JA922.  The District Court brushed this proposal aside as "unworkable."  *Id.*  Such a cursory conclusion would not, on remand, satisfy the District Court's obligation to make specific, on-the-record factual findings, as required by *Hubbard*, particularly in light of the strong public interest in access to judicial records filed in

SCA warrant, PR/TT, and Section 2703(d) matters.[7] *See Johnson*, 951 F.2d at 1277-78 (finding it insufficient for the district court "merely to allude" to a "general interest in keeping peer review processes out of the public eye" and requiring the district court on remand to "reconsider the need for sealing the entire case" and, if it "determine[s] that any sealing order remains appropriate," to "articulate the precise reasons why," especially in view of the "obvious public interest" in the case).

In sum, to the extent the District Court on remand determines that the common law presumption of access is overcome with respect to the limited retrospective relief sought by Petitioners, or prospectively, it must set forth the specific factual findings upon which it bases its conclusion and issue an order "no broader than is necessary to protect those specific interests identified as in need of protection." *Johnson*, 951 F.2d at 1278.

**V.** **The Public has a First Amendment and Common Law Right to Inspect Docket Sheets in SCA Warrant, PR/TT, and Section 2703(d) Matters; the District Court's Holding to the Contrary Requires Reversal.**

---

[7] The District Court's description of the relief requested by Petitioners is inaccurate. As described above, *supra* at 13-14, Petitioners proposed that the USAO or other government entity that initiated the matter be required to promptly move to unseal it at the close of the related criminal investigation. An order to show cause would only be necessary in the event the responsible government attorney failed to fulfill that obligation. JA847.

**A.** **Both the First Amendment and Common Law Presumptions of Access Apply to Court Docket Sheets.**

The Eleventh Circuit has squarely held that a district court's maintenance of a sealed docket sheet violates the First Amendment. *Valenti*, 987 F.2d at 715 (holding unconstitutional the maintenance of a "dual-docketing system" whereby certain dockets were sealed and "completely hid[den] from public view"). Numerous other federal courts have recognized that the First Amendment, as well as the common law, secures the public's capacity to inspect court docket sheets. *See Pellegrino*, 380 F.3d at 91 ("the media and the public possess a qualified First Amendment right to inspect docket sheets"); *Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (holding that "the public and press's First Amendment qualified right of access to civil proceedings extends to docket sheets"); *see also In re State-Record Company, Inc.,* 917 F.2d 124, 129 (4th Cir. 1990) (per curiam) (reversing the sealing of docket sheets in criminal cases as overbroad and incompatible with the First Amendment presumptive right of access); *Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) ("The First Amendment access right extends to court dockets, records, pleadings, and exhibits . . . ."); *United States v. Mendoza*, 698 F.3d 1303, 1307 (10th Cir. 2012) (noting that "dockets are generally public documents" and collecting cases).

The two-pronged inquiry of *Press Enterprise II* supports a First Amendment right of access. "Experience casts an affirming eye on the openness of docket sheets and their historical counterparts." *See Pellegrino*, 380 F.3d at 94 (tracing the tradition of open "docket books" in the United States to "the first years of the Republic"). And "[l]ogic supports this judgment of history." *Id.* at 95.

Access to docket sheets "enhances the appearance of fairness and enlightens the public both to the procedures the district court utilized to adjudicate the claims before it and to the materials it relied upon in reaching its determinations." *Public Citizen*, 749 F.3d at 268. Thus, "[p]recisely because docket sheets provide a map of the proceedings in the underlying cases, their availability greatly enhances the appearance of fairness" necessary to a functioning judicial system. *Pellegrino*, 380 F.3d at 95. Public docket sheets also "furnish an 'opportunity both for understanding the system in general and its workings in a particular case.'" *Id*. (quoting *Richmond Newspapers*, 448 U.S. at 572).

Further, as the Fourth Circuit has correctly observed, "there is a more repugnant aspect to depriving the public and press access to docket sheets: no one can challenge closure of a document or proceeding that is itself a secret." *Public Citizen*, 749 F.3d at 268. Even when judicial records reflected on court docket sheets are properly sealed, docket sheets typically remain open—necessarily so. Public docketing is the mechanism by which courts provide the public notice of the sealing of records to which the constitutional and common law presumptions of

access apply.  *See Robinson*, 935 F.2d at 288-89.  The ability of the public and the press to assert their presumptive rights of access to judicial records is, thus, "merely theoretical" if docket sheets are inaccessible.  *Pellegrino*, 380 F.3d at 93.

Simply put, "docket sheets do not constitute the kinds of government records that function properly only if kept secret, like grand jury proceedings." *Pellegrino*, 380 F.3d at 96.  To the contrary, the ability of the public to inspect docket sheets is a "critical component to providing meaningful access" to judicial records.  *Public Citizen*, 749 F.3d at 268 (citation omitted).  And it is particularly critical in the context of SCA warrant, PR/TT, and Section 2703(d) matters, where default sealing practices have "effectively shut out the public and the press from exercising their constitutional and common-law right of access."  *Id.*; *see also CBS, Inc. v. District Court,* 765 F.2d 823, 826 (9th Cir.1985) (noting that "a two-tier system, open and closed" erodes public confidence in the accuracy of records, and denies the public its right to "meaningful" access to judicial records).

**B.    The District Court Erred as a Matter of Law in Concluding that the Public has No First Amendment or Common Law Right to Inspect Docket Sheets in SCA Warrant, PR/TT, and Section 2703(d) Matters.**

Petitioners below requested, on a moving-forward basis only, "real-time" public access to the court's docket sheets in SCA warrant, PR/TT, and Section 2703(d) matters.  JA846, 849, 851.  The District Court rejected such relief on the ground that "real-time" access would enable the public to inspect docket sheets in

matters relating to active investigations and, according to the District Court, Petitioners had limited the relief they sought to post-investigation materials only. Thus, the District Court held that Petitioners were necessarily foreclosed from seeking "real-time" public access to docket sheets. JA950. Assuming that the District Court correctly limited the scope of the prospective relief that Petitioners were entitled to request,[8] the District Court's categorical denial of any First Amendment or common law right of public access to docket sheets in future SCA warrant, PR/TT, and Section 2703(d) matters—*including to docket sheets post-investigation*—was a legal error.

The District Court did not independently consider the public's First Amendment right to inspect docket sheets. JA950 (stating that its "wholesale denial of petitioners' First Amendment right of access reached all aspects of the records at issue and naturally encompassed any aspect of the petitioners' claim concerning docket information"). Nor did it explicitly address the public's common law right to inspect docket sheets when it concluded that the public is entitled to only certain limited information about SCA warrant, PR/TT, and Section 2703(d) matters on a "periodic" basis. *See* JA921. This Court should

---

[8] Petitioners disagree with this finding; as explained in their motion for reconsideration, the Reporters Committee sought public dockets for all future SCA warrant, Section 2703(d), and PR/TT matters. Pet'rs' Mot. for Recons. at 18, *In re Appl. of Jason Leopold*, No. 1:13-mc-712 (D.D.C. May 18, 2018), ECF No. 55; *see also* JA34.

reverse the District Court's rulings and hold that the docket sheets themselves are presumptively open to the public under the First Amendment and common law.

To be clear, the biannual reports released by the Clerk's Office do not include all information reflected on the court's docket sheets for SCA warrant, PR/TT, and Section 2703(d) matters; among other things, they do not reflect the documents filed in the matter, nor do they indicate whether the government's *ex parte* application for a warrant or order under the SCA or PRA was granted or denied. *See supra* Standing Order and Attachment; *cf. Public Citizen*, 749 F.3d at 268 (noting that public docket sheets allow the public to ascertain, among other things, "the materials that have been filed" and the "trial judge's decisions"); *Pellegrino*, 380 F.3d at 96 (stating that, by inspecting docket sheets, the public can discern, *inter alia*, "the types of materials that are likely to be sealed"). Periodic access to limited information from docket sheets is no substitute for the public's ability to inspect the docket sheets themselves. Further, as explained above, because these biannual reports delay public access to even the limited information they contain for at least six months and, for some matters, up to one year, they fail to comport with the contemporaneous nature of the public's right to access judicial records.

The District Court relied on this Court's decision in *In re Sealed Case* to deny, on the basis of "administrative burden," the existence of any presumption of openness for docket sheets in SCA warrant, Section 2703(d), and PR/TT matters.

*See* JA958 (citing *In re Sealed Case*, 199 F.3d at 526, for the proposition that "administrative burdens [can] justif[y] the denial of across-the-board docketing"). As explained above, however, this Court's analysis in *In re Sealed Case* was expressly limited to the "unique" context of grand jury proceedings. *Id.* at 526. For that reason, *In re Sealed Case* is inapposite. *See Pellegrino*, 380 F.3d at 96 (distinguishing *In re Sealed Case*—"[t]he only decision denying a First Amendment right to public docketing"—on the ground that it "concerned grand jury proceedings, which the Supreme Court has emphasized are entitled to a presumption of secrecy").

Because the District Court erroneously held that no constitutional (nor common law) right of access applies to docket sheets in SCA warrant, PR/TT, and Section 2703(d) matters, it did not identify any compelling or countervailing interest that would necessitate permanent sealing of such docket sheets—post-investigation or otherwise. *Robinson*, 935 F.2d at 290. To the extent that the District Court, on remand, concludes that the First Amendment presumption of access to docket sheets is overcome, it must "articulate specific findings on the record demonstrating" that the prospective sealing of such docket sheets, in whole or in part, "is narrowly tailored and essential to preserve a compelling government interest." *Id*.

**CONCLUSION**

For the foregoing reasons, the Court should reverse the judgment below, hold that the First Amendment and common law presumptions of access apply to judicial records filed in SCA warrant, Section 2703(d), and PR/TT matters, as well as associated docket sheets, and remand this matter to the District Court with instructions to evaluate the relief sought by Petitioners pursuant to the correct legal standards.

*/s/ Katie Townsend*
Katie Townsend
THE REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Phone: (202) 795.9300
Facsimile: (202) 795.9310
ktownsend@rcfp.org

*Counsel for the Reporters Committee for Freedom of the Press and Counsel of Record for Petitioners-Appellants*

*/s/ Jeffrey Light*
Jeffrey Light
D.C. Bar No. 485360
1712 Eye St. NW, Suite 915
Washington, DC 20006
Phone: (202) 277.6213
jeffrey@lawofficeofjeffreylight.com

*Counsel for Jason Leopold*

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with this Court's January 11, 2019 order granting Appellants' motion to exceed word limits and permitting Appellants to file a joint brief not to exceed 16,000 words.

2.  This brief contains 15,786 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

3.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Katie Townsend*
Katie Townsend
*Counsel of Record for*
*Petitioners-Appellants*
Dated: January 18, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2019, I electronically filed the foregoing

BRIEF FOR PETITIONERS-APPELLANTS with the United States Court of

Appeals for the District of Columbia Circuit using the CM/ECF system. All

participants who are registered CM/ECF users will be served by the appellate

CM/ECF system.

/s/ Katie Townsend
Katie Townsend
Counsel of Record for
Petitioners-Appellants

# ADDENDUM

# UNITED STATES CONSTITUTION, AMENDMENT IV

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.


# 18 U.S.C. §§ 2703, 2705, STORED COMMUNICATIONS ACT

Section 2703. Required disclosure of customer communications or records

**a) Contents of wire or electronic communications in electronic storage.**--A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

**(b) Contents of wire or electronic communications in a remote computing service.--(1)** A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection--

> **(A)** without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction; or
> **(B)** with prior notice from the governmental entity to the subscriber or customer if the governmental entity--
>> **(i)** uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena; or
>> **(ii)** obtains a court order for such disclosure under subsection (d) of this section;

except that delayed notice may be given pursuant to section 2705 of this title.

**(d) Requirements for court order.**--A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

Section 2705. Delayed notice

**(a) Delay of notification.--(1)** A governmental entity acting under section 2703(b) of this title may--
> **(A)** where a court order is sought, include in the application a request, which the court shall grant, for an order delaying the notification required under section 2703(b) of this title for a period not to exceed ninety days, if the court determines that there is reason to believe that notification of the existence of the court order may have an adverse result described in paragraph (2) of this subsection; or
> **(B)** where an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury subpoena is obtained, delay the notification required under section 2703(b) of this title for a period not to exceed ninety days upon the execution of a written certification of a supervisory official that there is reason to believe that notification of the existence of the subpoena may have an adverse result described in paragraph (2) of this subsection.

**(2)** An adverse result for the purposes of paragraph (1) of this subsection is--
> **(A)** endangering the life or physical safety of an individual;
> **(B)** flight from prosecution;
> **(C)** destruction of or tampering with evidence;
> **(D)** intimidation of potential witnesses; or
> **(E)** otherwise seriously jeopardizing an investigation or unduly delaying a trial.

**(3)** The governmental entity shall maintain a true copy of certification under paragraph (1)(B).

**(4)** Extensions of the delay of notification provided in <u>section 2703</u> of up to ninety days each may be granted by the court upon application, or by certification by a governmental entity, but only in accordance with subsection (b) of this section.

**(5)** Upon expiration of the period of delay of notification under paragraph (1) or (4) of this subsection, the governmental entity shall serve upon, or deliver by registered or first-class mail to, the customer or subscriber a copy of the process or request together with notice that--

    **(A)** states with reasonable specificity the nature of the law enforcement inquiry; and

    **(B)** informs such customer or subscriber--

        **(i)** that information maintained for such customer or subscriber by the service provider named in such process or request was supplied to or requested by that governmental authority and the date on which the supplying or request took place;

        **(ii)** that notification of such customer or subscriber was delayed;

        **(iii)** what governmental entity or court made the certification or determination pursuant to which that delay was made; and

        **(iv)** which provision of this chapter allowed such delay.

**(6)** As used in this subsection, the term "supervisory official" means the investigative agent in charge or assistant investigative agent in charge or an equivalent of an investigating agency's headquarters or regional office, or the chief prosecuting attorney or the first assistant prosecuting attorney or an equivalent of a prosecuting attorney's headquarters or regional office.

    **(b) Preclusion of notice to subject of governmental access.**--A governmental entity acting under <u>section 2703</u>, when it is not required to notify the subscriber or customer under <u>section 2703(b)(1)</u>, or to the extent that it may delay such notice pursuant to subsection (a) of this section, may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in--

    **(1)** endangering the life or physical safety of an individual;

    **(2)** flight from prosecution;

    **(3)** destruction of or tampering with evidence;

**(4)** intimidation of potential witnesses; or

**(5)** otherwise seriously jeopardizing an investigation or unduly delaying a trial.

Section 2707. Civil action

**(a) Cause of action.**--Except as provided in section 2703(e), any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

**(b) Relief.**--In a civil action under this section, appropriate relief includes--

**(1)** such preliminary and other equitable or declaratory relief as may be appropriate;

**(2)** damages under subsection (c); and

**(3)** a reasonable attorney's fee and other litigation costs reasonably incurred.

**(c) Damages.**--The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

**(d) Administrative discipline.**--If a court or appropriate department or agency determines that the United States or any of its departments or agencies has violated any provision of this chapter, and the court or appropriate department or agency finds that the circumstances surrounding the violation raise serious questions about whether or not an officer or employee of the United States acted willfully or intentionally with respect to the violation, the department or agency shall, upon receipt of a true and correct copy of the decision and findings of the court or appropriate department or agency promptly initiate a proceeding to determine whether disciplinary action against the officer or employee is warranted. If the head of the department or agency involved determines that disciplinary action is not warranted, he or she shall notify the Inspector General with jurisdiction over the department or agency concerned and shall provide the Inspector General with the reasons for such determination.

**(e) Defense.**--A good faith reliance on--

**(1)** a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization (including a request of a governmental entity under section 2703(f) of this title);

**(2)** a request of an investigative or law enforcement officer under section 2518(7) of this title; or

**(3)** a good faith determination that section 2511(3), section 2702(b)(9), or section 2702(c)(7) of this title permitted the conduct complained of is a complete defense to any civil or criminal action brought under this chapter or any other law.

**(f) Limitation.**--A civil action under this section may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation.

**(g) Improper disclosure.**--Any willful disclosure of a "record", as that term is defined in section 552a(a) of title 5, United States Code, obtained by an investigative or law enforcement officer, or a governmental entity, pursuant to section 2703 of this title, or from a device installed pursuant to section 3123 or 3125 of this title, that is not a disclosure made in the proper performance of the official functions of the officer or governmental entity making the disclosure, is a violation of this chapter. This provision shall not apply to information previously lawfully disclosed (prior to the commencement of any civil or administrative proceeding under this chapter) to the public by a Federal, State, or local governmental entity or by the plaintiff in a civil action under this chapter.

## 18 U.S.C. §§ 3123, 3127, PEN REGISTER ACT

Section 3123. Issuance of an order for a pen register or a trap and trace device

**(a) In general.--**

**(1) Attorney for the Government.**--Upon an application made under section 3122(a)(1), the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States, if the court finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. The order, upon service of that order, shall apply to any person or entity providing wire or electronic communication service in the United States whose assistance may facilitate the execution of the order. Whenever

such an order is served on any person or entity not specifically named in the order, upon request of such person or entity, the attorney for the Government or law enforcement or investigative officer that is serving the order shall provide written or electronic certification that the order applies to the person or entity being served.

**(2) State investigative or law enforcement officer.**--Upon an application made under section 3122(a)(2), the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device within the jurisdiction of the court, if the court finds that the State law enforcement or investigative officer has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation.

**(3)(A)** Where the law enforcement agency implementing an ex parte order under this subsection seeks to do so by installing and using its own pen register or trap and trace device on a packet-switched data network of a provider of electronic communication service to the public, the agency shall ensure that a record will be maintained which will identify--

> **(i)** any officer or officers who installed the device and any officer or officers who accessed the device to obtain information from the network;
> **(ii)** the date and time the device was installed, the date and time the device was uninstalled, and the date, time, and duration of each time the device is accessed to obtain information;
> **(iii)** the configuration of the device at the time of its installation and any subsequent modification thereof; and
> **(iv)** any information which has been collected by the device.
>
> To the extent that the pen register or trap and trace device can be set automatically to record this information electronically, the record shall be maintained electronically throughout the installation and use of such device.

**(B)** The record maintained under subparagraph (A) shall be provided ex parte and under seal to the court which entered the ex parte order authorizing the installation and use of the device within 30 days after termination of the order (including any extensions thereof).

 **(b) Contents of order.**--An order issued under this section--
 **(1)** shall specify--
> **(A)** the identity, if known, of the person to whom is leased or in whose name is listed the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied;

**(B)** the identity, if known, of the person who is the subject of the criminal investigation;

**(C)** the attributes of the communications to which the order applies, including the number or other identifier and, if known, the location of the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied, and, in the case of an order authorizing installation and use of a trap and trace device under subsection (a)(2), the geographic limits of the order; and

**(D)** a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates; and

**(2)** shall direct, upon the request of the applicant, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device under section 3124 of this title.

**(c) Time period and extensions.--(1)** An order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed sixty days.

**(2)** Extensions of such an order may be granted, but only upon an application for an order under section 3122 of this title and upon the judicial finding required by subsection (a) of this section. The period of extension shall be for a period not to exceed sixty days.

**(d) Nondisclosure of existence of pen register or a trap and trace device.--** An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that--

**(1)** the order be sealed until otherwise ordered by the court; and

**(2)** the person owning or leasing the line or other facility to which the pen register or a trap and trace device is attached or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

## 42 U.S.C. § 2000aa, PRIVACY PROTECTION ACT

Section 2000aa. Searches and seizures by government officers and employees in connection with investigation or prosecution of criminal offenses

**(a) Work product materials**

Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce; but this provision shall not impair or affect the ability of any government officer or employee, pursuant to otherwise applicable law, to search for or seize such materials, if--

**(1)** there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate: *Provided, however*, That a government officer or employee may not search for or seize such materials under the provisions of this paragraph if the offense to which the materials relate consists of the receipt, possession, communication, or withholding of such materials or the information contained therein (but such a search or seizure may be conducted under the provisions of this paragraph if the offense consists of the receipt, possession, or communication of information relating to the national defense, classified information, or restricted data under the provisions of section 793, 794, 797, or 798 of Title 18, or section 2274, 2275 or 2277 of this title, or section 783 of Title 50, or if the offense involves the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the sexual exploitation of children, or the sale or purchase of children under section 2251, 2251A, 2252, or 2252A of Title 18); or

**(2)** there is reason to believe that the immediate seizure of such materials is necessary to prevent the death of, or serious bodily injury to, a human being.

### (b) Other documents

Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize documentary materials, other than work product materials, possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce; but this provision shall not impair or affect the ability of any government officer or employee, pursuant to otherwise applicable law, to search for or seize such materials, if--

**(1)** there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate: *Provided, however*, That a government officer or employee may not search for or seize such materials under the provisions of this paragraph if the offense to which the materials relate consists of the receipt,

possession, communication, or withholding of such materials or the information contained therein (but such a search or seizure may be conducted under the provisions of this paragraph if the offense consists of the receipt, possession, or communication of information relating to the national defense, classified information, or restricted data under the provisions of section 793, 794, 797, or 798 of Title 18, or section 2274, 2275, or 2277 of this title, or section 783 of Title 50, or if the offense involves the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the sexual exploitation of children, or the sale or purchase of children under section 2251, 2251A, 2252, or 2252A of Title 18);

**(2)** there is reason to believe that the immediate seizure of such materials is necessary to prevent the death of, or serious bodily injury to, a human being;

**(3)** there is reason to believe that the giving of notice pursuant to a subpena duces tecum would result in the destruction, alteration, or concealment of such materials; or

**(4)** such materials have not been produced in response to a court order directing compliance with a subpena duces tecum, and--

> **(A)** all appellate remedies have been exhausted; or
>
> **(B)** there is reason to believe that the delay in an investigation or trial occasioned by further proceedings relating to the subpena would threaten the interests of justice.

### (c) Objections to court ordered subpoenas; affidavits

In the event a search warrant is sought pursuant to paragraph (4)(B) of subsection (b), the person possessing the materials shall be afforded adequate opportunity to submit an affidavit setting forth the basis for any contention that the materials sought are not subject to seizure.

## CLARIFYING LAWFUL OVERSEAS USE OF DATA(CLOUD) ACT, Pub. L. 115-141, Div. V, § 103, 132 Stat. 348 (2018)

SEC. 103. PRESERVATION OF RECORDS; COMITY ANALYSIS OF LEGAL PROCESS.

(a) REQUIRED PRESERVATION AND DISCLOSURE OF COMMUNICATIONS AND RECORDS.—

(1) AMENDMENT.—Chapter 121 of title 18, United States Code, is amended by adding at the end the following:

<< 18 USCA § 2713 >>

§ 2713. Required preservation and disclosure of communications and records
"A provider of electronic communication service or remote computing service shall comply with the obligations of this chapter to preserve, backup, or disclose the contents of a wire or electronic communication and any record or other information pertaining to a customer or subscriber within such provider's possession, custody, or control, regardless of whether such communication, record, or other information is located within or outside of the United States.".

<< 18 USCA T. 18 pt. I ch. 121 prec. § 2701 >>

(2) TABLE OF SECTIONS.—The table of sections for chapter 121 of title 18, United States Code, is amended by inserting after the item relating to section 2712 the following:
"2713. Required preservation and disclosure of communications and records.".

(b) COMITY ANALYSIS OF LEGAL PROCESS SEEKING CONTENTS OF WIRE OR ELECTRONIC COMMUNICATION.—Section 2703 of title 18, United States Code, is amended by adding at the end the following:

<< 18 USCA § 2703 >>

"(h) COMITY ANALYSIS AND DISCLOSURE OF INFORMATION REGARDING LEGAL PROCESS SEEKING CONTENTS OF WIRE OR ELECTRONIC COMMUNICATION.—
    "(1) DEFINITIONS.—In this subsection—
        "(A) the term 'qualifying foreign government' means a foreign government—
            "(i) with which the United States has an executive agreement that has entered into force under section 2523; and
            "(ii) the laws of which provide to electronic communication service providers and remote computing service providers substantive and procedural opportunities similar to those provided under paragraphs (2) and (5); and
        "(B) the term 'United States person' has the meaning given the term in section 2523.

    "(2) MOTIONS TO QUASH OR MODIFY.—(A) A provider of electronic communication service to the public or remote computing service, including a foreign electronic communication service or remote computing service, that is being required to disclose pursuant to legal process issued under this section the contents of a wire or electronic communication of a subscriber or

customer, may file a motion to modify or quash the legal process where the provider reasonably believes—

"(i) that the customer or subscriber is not a United States person and does not reside in the United States; and

"(ii) that the required disclosure would create a material risk that the provider would violate the laws of a qualifying foreign government.

Such a motion shall be filed not later than 14 days after the date on which the provider was served with the legal process, absent agreement with the government or permission from the court to extend the deadline based on an application made within the 14 days. The right to move to quash is without prejudice to any other grounds to *1215 move to quash or defenses thereto, but it shall be the sole basis for moving to quash on the grounds of a conflict of law related to a qualifying foreign government.

"(B) Upon receipt of a motion filed pursuant to subparagraph (A), the court shall afford the governmental entity that applied for or issued the legal process under this section the opportunity to respond. The court may modify or quash the legal process, as appropriate, only if the court finds that—

"(i) the required disclosure would cause the provider to violate the laws of a qualifying foreign government;

"(ii) based on the totality of the circumstances, the interests of justice dictate that the legal process should be modified or quashed; and

"(iii) the customer or subscriber is not a United States person and does not reside in the United States.

"(3) COMITY ANALYSIS.—For purposes of making a determination under paragraph (2)(B)(ii), the court shall take into account, as appropriate—

"(A) the interests of the United States, including the investigative interests of the governmental entity seeking to require the disclosure;

"(B) the interests of the qualifying foreign government in preventing any prohibited disclosure;

"(C) the likelihood, extent, and nature of penalties to the provider or any employees of the provider as a result of inconsistent legal requirements imposed on the provider;

"(D) the location and nationality of the subscriber or customer whose communications are being sought, if known, and the nature and extent of the subscriber or customer's connection to the United States, or if the legal process has been sought on behalf of a foreign authority pursuant to section 3512, the nature and extent of the subscriber or customer's connection to the foreign authority's country;

A-12

"(E) the nature and extent of the provider's ties to and presence in the United States;

"(F) the importance to the investigation of the information required to be disclosed;

"(G) the likelihood of timely and effective access to the information required to be disclosed through means that would cause less serious negative consequences; and

"(H) if the legal process has been sought on behalf of a foreign authority pursuant to section 3512, the investigative interests of the foreign authority making the request for assistance.

"(4) DISCLOSURE OBLIGATIONS DURING PENDENCY OF CHALLENGE.—A service provider shall preserve, but not be obligated to produce, information sought during the pendency of a motion brought under this subsection, unless the court finds that immediate production is necessary to prevent an adverse result identified in section 2705(a)(2).

"(5) DISCLOSURE TO QUALIFYING FOREIGN GOVERNMENT.—(A) It shall not constitute a violation of a protective order issued under section 2705 for a provider of electronic communication service to the public or remote computing service to disclose to the entity within a qualifying foreign government, *1216 designated in an executive agreement under section 2523, the fact of the existence of legal process issued under this section seeking the contents of a wire or electronic communication of a customer or subscriber who is a national or resident of the qualifying foreign government.

"(B) Nothing in this paragraph shall be construed to modify or otherwise affect any other authority to make a motion to modify or quash a protective order issued under section 2705.".

<< 18 USCA § 2703 NOTE >>

(c) RULE OF CONSTRUCTION.—Nothing in this section, or an amendment made by this section, shall be construed to modify or otherwise affect the common law standards governing the availability or application of comity analysis to other types of compulsory process or to instances of compulsory process issued under section 2703 of title 18, United States Code, as amended by this section, and not covered under subsection (h)(2) of such section 2703.

**Federal Rule of Criminal Procedure 41**
**Search and Seizure**

**(a) Scope and Definitions.**

> **(1) Scope.** This rule does not modify any statute regulating search or seizure, or the issuance and execution of a search warrant in special circumstances.
>
> **(2) Definitions.** The following definitions apply under this rule:
>
> > **(A)** "Property" includes documents, books, papers, any other tangible objects, and information.
> >
> > **(B)** "Daytime" means the hours between 6:00 a.m. and 10:00 p.m. according to local time.
> >
> > **(C)** "Federal law enforcement officer" means a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant.
> >
> > **(D)** "Domestic terrorism" and "international terrorism" have the meanings set out in 18 U.S.C. § 2331.
> >
> > **(E)** "Tracking device" has the meaning set out in 18 U.S.C. § 3117(b).

**(b) Venue for a Warrant Application.** At the request of a federal law enforcement officer or an attorney for the government:

> **(1)** a magistrate judge with authority in the district -- or if none is reasonably available, a judge of a state court of record in the district -- has authority to issue a warrant to search for and seize a person or property located within the district;
>
> **(2)** a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;
>
> **(3)** a magistrate judge--in an investigation of domestic terrorism or international terrorism--with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district;
>
> **(4)** a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both; and
>
> **(5)** a magistrate judge having authority in any district where activities related to the crime may have occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:
>
> > **(A)** a United States territory, possession, or commonwealth;

**(B)** the premises--no matter who owns them--of a United States diplomatic or consular mission in a foreign state, including any appurtenant building, part of a building, or land used for the mission's purposes; or

**(C)** a residence and any appurtenant land owned or leased by the United States and used by United States personnel assigned to a United States diplomatic or consular mission in a foreign state.

**(6)** a magistrate judge with authority in any district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district if:

**(A)** the district where the media or information is located has been concealed through technological means; or

**(B)** in an investigation of a violation of 18 U.S.C. § 1030(a)(5), the media are protected computers that have been damaged without authorization and are located in five or more districts.

**(c) Persons or Property Subject to Search or Seizure.** A warrant may be issued for any of the following:

**(1)** evidence of a crime;

**(2)** contraband, fruits of crime, or other items illegally possessed;

**(3)** property designed for use, intended for use, or used in committing a crime; or

**(4)** a person to be arrested or a person who is unlawfully restrained.

**(d) Obtaining a Warrant.**

**(1) In General.** After receiving an affidavit or other information, a magistrate judge--or if authorized by Rule 41(b), a judge of a state court of record--must issue the warrant if there is probable cause to search for and seize a person or property or to install and use a tracking device.

**(2) Requesting a Warrant in the Presence of a Judge.**

**(A) Warrant on an Affidavit.** When a federal law enforcement officer or an attorney for the government presents an affidavit in support of a warrant, the judge may require the affiant to appear personally and may examine under oath the affiant and any witness the affiant produces.

**(B) Warrant on Sworn Testimony.** The judge may wholly or partially dispense with a written affidavit and base a warrant on sworn testimony if doing so is reasonable under the circumstances.

**(C) Recording Testimony.** Testimony taken in support of a warrant must be recorded by a court reporter or by a suitable recording device,

and the judge must file the transcript or recording with the clerk, along with any affidavit.

**(3) Requesting a Warrant by Telephonic or Other Reliable Electronic Means.** In accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means.

**(e) Issuing the Warrant.**

**(1) In General.** The magistrate judge or a judge of a state court of record must issue the warrant to an officer authorized to execute it.

**(2) Contents of the Warrant.**

**(A) Warrant to Search for and Seize a Person or Property.** Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

**(i)** execute the warrant within a specified time no longer than 14 days;

**(ii)** execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and

**(iii)** return the warrant to the magistrate judge designated in the warrant.

**(B) Warrant Seeking Electronically Stored Information.** A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

**(C) Warrant for a Tracking Device.** A tracking-device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used. The time must not exceed 45 days from the date the warrant was issued. The court may, for good cause, grant one or more extensions for a reasonable period not to exceed 45 days each. The warrant must command the officer to:

**(i)** complete any installation authorized by the warrant within a specified time no longer than 10 days;

**(ii)** perform any installation authorized by the warrant during the daytime, unless the judge for good cause expressly authorizes installation at another time; and

**(iii)** return the warrant to the judge designated in the warrant.

**(f) Executing and Returning the Warrant.**

    **(1) Warrant to Search for and Seize a Person or Property.**

        **(A) Noting the Time.** The officer executing the warrant must enter on it the exact date and time it was executed.

        **(B) Inventory.** An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person. In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

        **(C) Receipt.** The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property. For a warrant to use remote access to search electronic storage media and seize or copy electronically stored information, the officer must make reasonable efforts to serve a copy of the warrant and receipt on the person whose property was searched or who possessed the information that was seized or copied. Service may be accomplished by any means, including electronic means, reasonably calculated to reach that person.

        **(D) Return.** The officer executing the warrant must promptly return it--together with a copy of the inventory--to the magistrate judge designated on the warrant. The officer may do so by reliable electronic means. The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant.

    **(2) Warrant for a Tracking Device**.

        **(A) Noting the Time.** The officer executing a tracking-device warrant must enter on it the exact date and time the device was installed and the period during which it was used.

**(B) Return.** Within 10 days after the use of the tracking device has ended, the officer executing the warrant must return it to the judge designated in the warrant. The officer may do so by reliable electronic means.

**(C) Service.** Within 10 days after the use of the tracking device has ended, the officer executing a tracking-device warrant must serve a copy of the warrant on the person who was tracked or whose property was tracked. Service may be accomplished by delivering a copy to the person who, or whose property, was tracked; or by leaving a copy at the person's residence or usual place of abode with an individual of suitable age and discretion who resides at that location and by mailing a copy to the person's last known address. Upon request of the government, the judge may delay notice as provided in Rule 41(f)(3).

**(3) Delayed Notice.** Upon the government's request, a magistrate judge--or if authorized by Rule 41(b), a judge of a state court of record--may delay any notice required by this rule if the delay is authorized by statute.

**(g) Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

**(h) Motion to Suppress.** A defendant may move to suppress evidence in the court where the trial will occur, as Rule 12 provides.

**(i) Forwarding Papers to the Clerk.** The magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized.

## 28 C.F.R. § 50.9
### Policy with regard to open judicial proceedings

Because of the vital public interest in open judicial proceedings, the Government has a general overriding affirmative duty to oppose their closure. There is, moreover, a strong presumption against closing proceedings or portions thereof, and the Department of Justice foresees very few cases in which closure would be

warranted. The Government should take a position on any motion to close a judicial proceeding, and should ordinarily oppose closure; it should move for or consent to closed proceedings only when closure is plainly essential to the interests of justice. In furtherance of the Department's concern for the right of the public to attend judicial proceedings and the Department's obligation to the fair administration of justice, the following guidelines shall be adhered to by all attorneys for the United States.

(a) These guidelines apply to all federal trials, pre- and post-trial evidentiary proceedings, arraignments, bond hearings, plea proceedings, sentencing proceedings, or portions thereof, except as indicated in paragraph (e) of this section.

(b) A Government attorney has a compelling duty to protect the societal interest in open proceedings.

(c) A Government attorney shall not move for or consent to closure of a proceeding covered by these guidelines unless:
 (1) No reasonable alternative exists for protecting the interests at stake;
 (2) Closure is clearly likely to prevent the harm sought to be avoided;
 (3) The degree of closure is minimized to the greatest extent possible;
 (4) The public is given adequate notice of the proposed closure; and, in addition, the motion for closure is made on the record, except where the disclosure of the details of the motion papers would clearly defeat the reason for closure specified under paragraph (c)(6) of this section;
 (5) Transcripts of the closed proceedings will be unsealed as soon as the interests requiring closure no longer obtain; and
 (6) Failure to close the proceedings will produce;
  (i) A substantial likelihood of denial of the right of any person to a fair trial; or
  (ii) A substantial likelihood of imminent danger to the safety of parties, witnesses, or other persons; or
  (iii) A substantial likelihood that ongoing investigations will be seriously jeopardized.

(d) A government attorney shall not move for or consent to the closure of any proceeding, civil or criminal, except with the express authorization of:
 (1) The Deputy Attorney General, or,
 (2) The Associate Attorney General, if the Division seeking authorization is under the supervision of the Associate Attorney General.

(e) These guidelines do not apply to:
   (1) The closure of part of a judicial proceeding where necessary to protect national security information or classified documents; or
   (2) In camera inspection, consideration or sealing of documents, including documents provided to the Government under a promise of confidentiality, where permitted by statute, rule of evidence or privilege; or
   (3) Grand jury proceedings or proceedings ancillary thereto; or
   (4) Conferences traditionally held at the bench or in chambers during the course of an open proceeding; or
   (5) The closure of judicial proceedings pursuant to 18 U.S.C. 3509
   (d) and (e) for the protection of child victims or child witnesses.

(f) Because of the vital public interest in open judicial proceedings, the records of any proceeding closed pursuant to this section, and still sealed 60 days after termination of the proceeding, shall be reviewed to determine if the reasons for closure are still applicable. If they are not, an appropriate motion will be made to have the records unsealed. If the reasons for closure are still applicable after 60 days, this review is to be repeated every 60 days until such time as the records are unsealed. Compliance with this section will be monitored by the Criminal Division.

(g) The principles set forth in this section are intended to provide guidance to attorneys for the Government and are not intended to create or recognize any legally enforceable right in any person.