ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE

———————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 18-5276

———————————

JASON LEOPOLD AND REPORTERS COMM.
FOR FREEDOM OF THE PRESS,                    Appellants,

v.

UNITED STATES OF AMERICA,                    Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

JESSIE K. LIU
United States Attorney

ELIZABETH TROSMAN
CHRISELLEN R. KOLB
PAMELA S. SATTERFIELD
* PETER S. SMITH
D.C. Bar #465131
Assistant United States Attorneys
* Counsel for Oral Argument
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
Peter.Smith@usdoj.gov
(202) 252-6829

No. 13-MC-712 (BAH)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to this appeal are appellants Jason Leopold and Reporters Committee for Freedom of the Press, and appellee, the United States of America.

## Rulings Under Review

This is an appeal from the February 26, 2018, memorandum opinion and order of the Honorable Beryl A. Howell, Chief Judge, granting in part and denying in part appellants' petitions to unseal electronic surveillance applications and orders, and Judge Howell's August 16, 2018, memorandum opinion and order denying appellants' motion for reconsideration of the district court's February 26, 2018, order. The challenged decisions are published at *In the Matter of the Application of Jason Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, No. 13-MC-0712 (Howell, C.J.), 300 F. Supp. 3d 61 (D.D.C.

Feb. 26, 2018) (JA 856-925), and 327 F. Supp. 3d 1 (D.D.C. Aug. 16, 2018) (JA 927-64).

## Related Cases

Appellee is unaware of any related cases.

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations are contained in the Addendum to the Brief for Appellant.

# TABLE OF CONTENTS

COUNTERSTATEMENT OF THE CASE............................................. 1

  Introduction ................................................................................1

  Overview of Relevant Statutes............................................6

        1.    The Pen Register Act ("PRA")......................................6

        2.    The Stored Communications Act ("SCA").....................9

  Appellants' Petitions to Unseal Records............................11

  The Initial Unsealing of Records .......................................13

  The Unsealing of Redacted Materials from PR/TT Matters............16

  The Extraction of Information from Sealed Matters.......................17

  The District Court's Initial Ruling.......................................24

        1.    First Amendment Right of Access ..............................24

        2.    Common Law Right of Access.....................................27

  The Motion for Reconsideration....................................................30

SUMMARY OF ARGUMENT.................................................................31

ARGUMENT .......................................................................................32

  I.    The Public Lacks a First Amendment Right of Access to the
        Contested Materials. ...........................................................32

        A.    Standard of Review and Applicable Legal Principles........33

        B.    Discussion ..................................................................34

  II.   The District Court Did Not Abuse Its Discretion in
        Concluding that, Under the Common Law, the Public Has
        Only a Limited, Prospective Right of Access to the
        Contested Materials. ...........................................................48

A.  Standard of Review and Applicable Legal Principles ........ 48

B.  Discussion .......................................................................... 51

CONCLUSION ..................................................................................... 57

# TABLE OF AUTHORITIES*

Page

*ACLU v. Holder*, 673 F.3d 245 (4th Cir. 2011) ....................................34

*Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*,
    715 F.3d 631 (7th Cir. 2013) ...........................................................38

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ..........................44-45

\* *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918
    (D.C. Cir. 2003) .............................................................................33, 39

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir. 1996) ..49-50

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) .......52-53

\* *In re Application of the United States for an Order Pursuant to
    18 U.S.C. Section 2703(d) ("Appelbaum"),*
    707 F.3d 283 (4th Cir. 2013) ................... 5, 9, 21, 25, 35, 36, 42-44, 47

*In re Jennifer Granick & Riana Pfeffkorn*, No. 16-MC-80206-KAW,
    2018 WL 7569335 (N.D. Cal. Dec. 18, 2018) ....................................51

*In re Nat'l Broad. Co.*, 653 F.2d 609 (D.C. Cir. 1981) ...........................50

\* *In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) ...................... 44, 51, 56

*Labow v. Dep't of Justice*, 831 F.3d 523 (D.C. Cir. 2016) ........................2

*Messina v. Krakower*, 439 F.3d 755 (D.C. Cir. 2006)............................30

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661
  (D.C. Cir. 2017)................................................................49-50

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)................50

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ....................39

*Press-Enter. Co. v. Superior Court of Cal. ("Press-Enter. I")*,
  464 U.S. 501 (1984) ........................................................32-34

*Press-Enter. Co. v. Superior Court of Cal. for Riverside Cty.*
  *("Press-Enter. II")*, 478 U.S. 1 (1986)..................................32

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ...............33

*Rodriguez v. United States*, 135 S. Ct. 1609 (2015)..............................42

*Terry v. Ohio*, 392 U.S. 1 (1968)..............................................42

*United States v. Ackies*, 918 F.3d 190 (1st Cir. 2019)................38, 40, 45

*United States v. Berkos*, 543 F.3d 392 (7th Cir. 2008) ..........................38

*United States v. Brice*, 649 F.3d 793 (D.C. Cir. 2011) .................24, 33-34

*United States v. Camick*, 796 F.3d 1206 (10th Cir. 2015).....................52

*United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008) ..........................32

*United States v. El-Sayegh*, 131 F.3d 158 (D.C. Cir. 1997) ..............35, 50

*   *United States v. Hubbard*, 650 F.2d 293
  (D.C. Cir. 1980)..............................................27-28, 31, 48-51, 53-54

*United States v. Jones*, 565 U.S. 400 (2012) ..........................................45

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993)........................53

*Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897
    (D.C. Cir. 1996) .................................................................................... 26, 48

*Wash. Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) .................... 33, 35

## OTHER AUTHORITIES

5 U.S.C. § 552(b)(7)(A) ........................................................................... 39

18 U.S.C. § 2703 ................................................................................ 6, 37

18 U.S.C. § 2703(a) ....................................... 1, 9-10, 22, 26, 31, 37-38, 41

18 U.S.C. § 2703(b) ...................................................................... 22, 37, 43

18 U.S.C. § 2703(b)(1)(A) ......................................................................... 10

18 U.S.C. § 2703(c) .................................................................................. 43

18 U.S.C. § 2703(d) ......... 1, 3-5, 10, 14, 19-23, 25-29, 31, 35-36, 42-47, 55

18 U.S.C. § 2703(g) .......................................................................... 38, 41

18 U.S.C. § 2705(a) .................................................................................. 10

18 U.S.C. § 2705(b) ......................................................................... 11-12, 46

18 U.S.C. § 2713 ....................................................................................... 40

18 U.S.C. § 3122(a)(1) ................................................................................ 7

18 U.S.C. § 3122(b) .................................................................................... 7

18 U.S.C. § 3123 .................................................................... 2, 6, 31, 46

18 U.S.C. § 3123(a)(1) ......................................................................... 8, 43

18 U.S.C. § 3123(b)(1) ................................................................................ 8

18 U.S.C. § 3123(b)(1)(A) ......................................................................... 43

18 U.S.C. § 3123(c) .................................................................................... 8

18 U.S.C. § 3123(d) ..................................................................... 9, 25, 34

18 U.S.C. § 3123(d)(1) ................................................................... 11

18 U.S.C. § 3127(3) ..................................................................... 2, 7

18 U.S.C. § 3127(4) ..................................................................... 2, 7

28 C.F.R. § 50.10 ......................................................................... 46

28 C.F.R. § 50.9(a) ....................................................................... 42

28 C.F.R. § 50.9(e)(3) .................................................................. 42

28 C.F.R. § 50.9(f) ....................................................................... 42

Fed. R. Crim. P. 41 .................................... 26, 35-38, 40-41, 43, 45

Fed. R. Crim. P. 41(f)(1) .............................................................. 37

H.R. Rep. No. 99-647 (1986) ....................................................... 40

S. Rep. 99-541 (1986) .................................................................. 40

Consolidated Appropriations Act, 2018, Pub. L. 115-141 .................. 39-40

Dep't of Justice, Final Rule, 79 Fed. Reg. 10989-01,
    2014 WL 722497(F.R.) ............................................................ 46

DOJ October 19, 2017, Policy Regarding Applications for Protective
    Orders Pursuant to 18 U.S.C. § 2705(b), available at
    https://www.justice.gov/criminal-ccips/page/file/1005791/
    download ............................................................................... 46

Electronic Communications Privacy Act ("ECPA"), Pub. L. No. 99-508,
    100 Stat. 1848 (1986) ............................................................... 9

http://www.dcd.uscourts.gov/sites/dcd/files/MOU_Electronic_Filing_Pen
_Registers.pdf ................................................................................... 4

https://www.dcd.uscourts.gov/news/standing-order-regarding-unsealing-
limited-docket-information-sealed-application .................................... 4

## ISSUES PRESENTED

I.      Whether the district court erred in finding that the public lacks a First Amendment right of access to certain records filed in the district court in connection with active criminal investigations, including applications for warrants under the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2703(a), and court orders issued under either the SCA, 18 U.S.C. § 2703(d), or the Pen Register Act ("PRA"), 18 U.S.C. § 3123, where there is no longstanding tradition of public access to such materials.

II.     Whether the district court abused its discretion in ruling that there is only a limited common law right of access to materials maintained under seal pursuant to 18 U.S.C. §§ 2703(a), -2703(d), and - 3123, where the district court provided access to the requested materials to the extent practicable, and where the district court declined appellants' broader requests after properly considering the extensive administrative burden that unsealing the requested materials would impose on the district court.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 18-5276

———————————

JASON LEOPOLD AND REPORTERS COMM.
  FOR FREEDOM OF THE PRESS,                           Appellants,

        v.

UNITED STATES OF AMERICA,                              Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

BRIEF FOR APPELLEE

———————————

## COUNTERSTATEMENT OF THE CASE

## Introduction

Appellants Jason Leopold, an investigative journalist, and the
Reporters Committee for Freedom of the Press, argue (at 19-22) that they
have a retrospective right of access under the First Amendment and the
common law to (1) warrants issued pursuant to the Stored
Communications Act ("SCA"), 18 U.S.C. § 2703(a) ("SCA warrants"), (2)
court orders issued pursuant to 18 U.S.C. § 2703(d), and (3) orders

authorizing the installation and monitoring of pen register and trap and trace ("PR/TT") devices,[1] pursuant to the Pen Register Act ("PRA"), 18 U.S.C. § 3123, in criminal cases prosecuted by the United States Attorney's Office for the District of Columbia ("USAO-DC") from September 2001 through the present (JA 14-41).[2] In addition, appellants requested that the district court permit public access to these materials prospectively, including contemporaneous access to "the dockets and docket entries reflecting such applications and orders" (JA 40).

Appellants have received a substantial portion of the relief they sought. For approximately two years, the district court, the Office of the Clerk of Court (hereinafter "Clerk's Office"), and the USAO-DC worked with appellants to redact and unseal responsive materials, and to narrow any areas of disagreement (JA 861-62). With respect to their

---

[1] A pen register is "a device or process which records or decodes, for example, the outgoing numbers dialed by a target telephone." *See* 18 U.S.C. § 3127(3). *See also Labow v. Dep't of Justice*, 831 F.3d 523, 527 (D.C. Cir. 2016) ("A pen register is a device installed on a phone line to enable recording the phone numbers dialed on that line."). A "trap and trace device" captures the numbers of incoming calls made to a target phone. *See* 18 U.S.C. § 3127(4).

[2] "JA" refers to the Joint Appendix filed by petitioners. "Document No." refers to the designated document in the district court's docket for this case.

retrospective access to these materials, appellants (and the public) received, inter alia: (1) the total numbers of PR/TT matters filed by the USAO-DC between 2008 and 2016; (2) the total numbers of § 2703(d) and SCA warrant matters, retrieved using certain search criteria, filed by the USAO-DC and Department of Justice ("DOJ") components during this period; (3) certain docket information concerning PR/TT matters the USAO initiated during this period; (4) over 100 pages of redacted documents from four representative sample PR/TT matters from 2012; and (5) 15 categories of extracted information -- including case numbers, date executed, date docketed, type of application, number of pages, name of assigned judge, lead statutory violation, law enforcement agency, and service provider -- from a representative sample of 10% of PR/TT matters filed by the USAO-DC during 2012 (JA 874-75).

To accommodate appellants' request for access to these materials on a prospective basis, the Clerk's Office and the USAO-DC entered into a Memorandum of Understanding ("MOU") on August 15, 2017, that provides for the standardized electronic filing and public reporting of case-caption information for the three types of filings at issue in this

litigation (MOU at 2-3).[3] Under the MOU, the Clerk's Office will publically disclose biannual reports reflecting "the docket numbers and case captions associated with sealed applications," except for grand-jury subpoenas, and will also disclose "the total number of PR/TT, § 2703(d), and SCA warrant applications filed by the USAO-DC, the number and type of accounts that such applications target, the names of the providers to which these applications are directed, and the primary criminal offense under investigation" (MOU at 2; JA 918-19).[4]

Despite the efforts of the district court and the parties to provide appellants with responsive materials, appellants continue to demand broad access to information that has been traditionally maintained by the district court under seal. Judge Howell's rulings make clear what remains at issue. Judge Howell denied appellants' requests for extracted information from 100% of the sealed PR/TT matters that the USAO-DC

---

[3] The MOU is available on the district court's website at: http://www.dcd.uscourts.gov/sites/dcd/files/MOU_Electronic_Filing_Pen_Registers.pdf

[4] Since the adoption of the MOU, the Clerk's Office has posted three biannual reports on the district court's website at: https://www.dcd.uscourts.gov/news/standing-order-regarding-unsealing-limited-docket-information-sealed-application.

has initiated since 2008 (as opposed to the 10% sampling appellants already received) (JA 885). Judge Howell also declined to unseal case numbers and associated docket information for § 2703(d) matters filed from 2008 to the present (JA 885). Further, Judge Howell declined to order public access to real-time docket information for PR/TT, § 2703(d), and SCA warrant materials (JA 924-25). Judge Howell concluded instead that the biannual reports issued by the Clerk's Office pursuant to the MOU appropriately balanced the public's common law right of access to these materials with the need to protect the integrity of pending investigations (JA 918-23).

Appellants are not entitled to this additional information. The PR/TT, SCA warrant, and § 2703(d) orders appellants seek pertain to pre-indictment, investigative matters, akin to grand-jury proceedings. Appellants do not cite a single case holding that they have a right of access to these broad categories of materials under either the First Amendment or the common law. Indeed, because these materials traditionally have not been available to the public, *see In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d) ("Appelbaum")*, 707 F.3d 283, 295 (4th Cir. 2013), appellants lack a First

Amendment right of access to them. Nor does the common law require broad public access to these investigatory materials. Any broad, retrospective unsealing would require the Clerk's Office, and the USAO-DC, to engage in a complex and burdensome process to examine thousands of sealed matters to determine whether disclosure, in whole or in part, would adversely affect active criminal investigations, or jeopardize witness security. Moreover, the district court correctly found that the MOU procedures adequately protected appellants' interests in access to these materials on a prospective basis. Thus, appellants lack a right of access to the materials they seek on appeal.

## Overview of Relevant Statutes

The PRA and SCA allow for the sealing of records in order to protect, inter alia, the confidentiality of law enforcement techniques, the privacy of individuals who are not subsequently charged, and the safety of witnesses, victims, confidential informants, and others involved in criminal investigations. *See generally* 18 U.S.C. §§ 2703, -3123.

### 1.    The Pen Register Act ("PRA")

The PRA authorizes "[a]n attorney for the Government" to apply "for an order or an extension of an order . . . authorizing or approving the

installation and use of a pen register or a trap and trace device under this chapter, in writing under oath or equivalent affirmation, to a court of competent jurisdiction." 18 U.S.C. § 3122(a)(1). PR/TT devices record outgoing and incoming signals from an instrument that transmits or receives an "electronic communication"; these devices can be used to identify the source or recipient -- but not the contents of -- the communication. 18 U.S.C. § 3127(3), (4).

The PRA provides explicit instructions regarding the content of applications seeking, and orders authorizing, the use of PR/TT devices. Each application must include "(1) the identity of the attorney for the Government or the State law enforcement or investigative officer making the application and the identity of the law enforcement agency conducting the investigation; and (2) a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b). The order authorizing the use of the PR/TT device must be entered "ex parte" based on a judicial finding "that the attorney for the Government has certified to the court that the information likely to be obtained by such

7

installation and use is relevant to an ongoing criminal investigation." 18 U.S.C. § 3123(a)(1).

A PR/TT order "shall specify" certain information about the target, including: "the identity, if known, of the person to whom is leased or in whose name is listed the telephone line or other facility" on which the PR/TT device is used; "the identity, if known, of the person who is the subject of the criminal investigation"; "the attributes of the communications to which the order applies, including the number or other identifier and, if known, the location of the telephone line or other facility" on which the PR/TT device is used; and "a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates." 18 U.S.C. § 3123(b)(1). PR/TT orders "shall authorize" the installation of a PR/TT device for no longer than 60 days, though extensions may be granted. 18 U.S.C. § 3123(c).

Orders for PR/TT devices also "shall direct that . . . (1) the order be sealed until otherwise ordered by the court; and (2) the person owning or leasing the line or other facility to which the pen register or a trap and trace device is attached or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen

register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court." 18 U.S.C. § 3123(d).

### 2. The Stored Communications Act ("SCA")

In 1986, Congress enacted the SCA as Title II of the Electronic Communications Privacy Act ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848 (1986), which regulates, inter alia, the government's access to stored wire and electronic communications. The SCA "was enacted to protect the privacy of users of electronic communications by criminalizing the unauthorized access of the contents and transactional records of stored wired and electronic communications, while providing an avenue for law enforcement entities to compel a provider of electronic communications services to disclose the contents of records of electronic communications." *Appelbaum*, 707 F.3d at 286-87.

Under 18 U.S.C. § 2703(a), the SCA authorizes the government to seek a warrant requiring electronic-communication service and remote-computing-service providers to disclose "the contents of a wire or electronic communication," without notice to the subscriber, pursuant to

a warrant "issued using the procedures described in the Federal Rules of Criminal Procedure." 18 U.S.C. §§ 2703(a), (b)(1)(A).

Moreover, 18 U.S.C. § 2703(d) authorizes the government to compel the disclosure of records pertaining to a subscriber, including logs maintained by a network server. A § 2703(d) order does not require a showing of probable cause. Instead, a court may issue an order under § 2703(d) when "the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

The SCA does not require the sealing of SCA warrants or § 2703(d) orders and applications in support thereof. Nevertheless, the SCA explicitly relieves the government of any obligation to notify a subscriber or customer about the compelled disclosure pursuant to an SCA warrant, *see* 18 U.S.C. § 2703(b)(1)(A), and authorizes delayed notification to the subscriber of compelled disclosure pursuant to a § 2703(d) order. *See* 18 U.S.C. § 2705(a). In addition, the SCA authorizes the government to seek an order prohibiting the provider from notifying the subscriber of the government's application, "for such period as the court deems

10

appropriate," in order to protect legitimate law enforcement interests. 18 U.S.C. § 2705(b) (court may prohibit disclosure to subscriber where disclosure would, inter alia, "seriously jeopardize[e] an investigation").

## Appellants' Petitions to Unseal Records

On July 16, 2013, Leopold petitioned the district court to unseal records (JA 14-33). Leopold sought all "applications, supporting affidavits, and court orders regarding pen registers, trap and trace devices, tracking devices, cell site location, stored email, telephone logs, and customer account records from electronic service providers, except for those which relate to an ongoing investigation" (JA 14). Leopold did not limit his request to a specific time-period. In addition, as prospective relief, Leopold proposed that the district court "change its procedures to provide for a presumptive expiration date of 180 days on all sealing and nondisclosure orders" (JA 18).

On December 20, 2013, the USAO-DC opposed the petition, stating that it agreed "with petitioner's basic premise that applications and orders relating to electronic surveillance methods need not necessarily be permanently sealed." Document 10 at 2 (citing 18 U.S.C. § 3123(d)(1) (order granting application of pen register shall be sealed "until

11

otherwise ordered by the Court"), and 18 U.S.C. § 2705(b) (sealing order under SCA remains in effect "for such period as the Court deems appropriate")). The USAO-DC, however, had difficulty identifying responsive documents in closed matters (Document 10). Specifically, the USAO-DC lacked a list of docket numbers associated with PR/TT and SCA applications or orders filed in the district court, and had difficulty identifying the appropriate USAO-DC personnel and law enforcement officials in order to determine whether a particular investigation had been closed, and, if so, whether the requested materials needed to remain sealed due to witness safety, national security, or the pendency of related investigations (JA 858). The USAO-DC opposed any presumptive expiration date for sealing orders given the need for judicial discretion in order to balance the interests at stake in the relevant statutes (JA 858-59).

On August 18, 2016, the district court allowed the Reporters Committee to intervene in Leopold's case (JA 04). That same day, the Reporters Committee filed a petition seeking the unsealing of "all applications and supporting documents," and "any court orders" filed by the government pursuant to the PRA and SCA, however, the Reporters

12

Committee did not seek documents relating to "active" investigations (JA 34). The Reporters Committee also requested the unsealing of "dockets and docket entries reflecting such applications and orders," and sought an order directing "that any future applications and orders of this kind be reflected on public dockets and either filed publicly or unsealed after an appropriate period of time consistent with statutory, constitutional, and common law requirements" (JA 35, 40).

### The Initial Unsealing of Records

The parties and the district court then embarked on an effort to narrow the issues, which involved three steps: (1) the unsealing and public release by the Clerk's Office of docket numbers and limited docket information for PR/TT and certain SCA matters filed during an agreed-upon range of years; (2) the unsealing and public release by the USAO-DC of redacted PR/TT applications and orders from a sampling of such matters filed in 2012, in order to assess both the burden of redacting and unsealing the requested records and the value of the information yielded; and (3) the extraction by the USAO-DC of agreed-upon categories of information from 10% of PR/TT matters filed in 2012, and the unsealing and public release of that extracted information (JA 862).

13

During the initial status hearings, Leopold's counsel stated that his client was not seeking personally identifying information such as a target's name or email and that such information could be redacted (5/4/16 Tr. 9-10). Leopold was "particularly interested" in obtaining electronically stored information "beginning after September 11, 2001" (6/24/16 Tr. 10, 13). Judge Howell told the parties that the Clerk's Office had run "very, raw, rough numbers" and that, in 2011, the government had filed 244 pen register applications and 81 applications under § 2703(d) (6/24/16 Tr. 10).

On August 23, 2016, the parties agreed to start with unsealing PR/TT matters filed by the USAO-DC in 2012 (Document 19; JA 862). To that end, the Clerk's Office began compiling a list of Miscellaneous Case ("MC") numbers for those matters (JA 862-63).[5]

At this time (i.e., before 2017), the USAO-DC's own files did not use the court's docket number to reference particular investigations or

---

[5] The Clerk's Office assembled a list of captions and docket numbers for 235 PR/TT matters filed under seal by the USAO-DC during 2012 (JA 865). This process required the Clerk's Office, inter alia, to examine each MC docket individually to determine the identity of the institutional litigant (i.e., whether the application had been filed by the USAO-DC or another institutional filer) (JA 865).

14

prosecutions (JA 859). Accordingly, in order to find relevant materials, the USAO-DC had to identify the relevant case through the target telephone number associated with each MC docket number, and then contact the assigned Assistant United States Attorney ("AUSA") and law enforcement personnel to determine whether the matter was open, closed, or related to a pending investigation (JA 859-60, 863-64). In appropriate cases, the USAO-DC would then file motions allowing the office to obtain certified copies of the (sealed) records in the district court's file; redact any personally identifying information; and, if warranted, file a second motion to unseal the documents, as redacted (JA 858-59, 863).

On September 21, 2016, the district court unsealed and publicly filed the 2012 list of PR/TT matters (JA 42). The 2012 list did not include the target telephone numbers or any personally identifying information, but included the docket number, the case caption, the date the matter was filed, the date an order was entered, the category, and the event (JA 44-96).

15

**The Unsealing of Redacted Materials from PR/TT Matters**

In order to assess the burdensomeness of appellants' unsealing request, the USAO-DC randomly selected ten matters from the 2012 list in which the assigned AUSA was still employed by the USAO-DC (JA 865).[6] For the ten sample matters, the office consulted with the AUSA, the AUSA's supervisor, and law enforcement agents, about the status of the investigation and any possible effects on other related investigations (JA 865, 869). Ultimately, the office determined that four of the ten PR/TT matters could be unsealed, in part, with redactions (JA 869).

On October 27, 2016, the government moved to partially unseal these four PR/TT matters (JA 05, 869). The motions had to be hand-filed, in paper form (MOU at 1; JA 873). On October 31, 2016, Judge Howell granted the government's motions to unseal, and the USAO-DC began to review and redact the certified copies of the court records in each of the four representative PR/TT matters (JA 05-06, 869-70).

---

[6] The office recognized that unsealing matters handled by persons no longer employed by the office would require locating and contacting former AUSAs, an onerous and time-consuming process (JA 865).

16

On December 9, 2016, Judge Howell granted the government's motions to partially unseal the four sample PR/TT matters, and publicly filed the redacted records (Document 26; JA 869).

On December 16, 2016, the parties jointly proposed that the Clerk's Office compile and file on the public docket lists of pen register matters filed by the USAO-DC for the years 2001 to 2011 (Document 27; JA 865).

## The Extraction of Information from Sealed Matters

On December 19, 2016, the parties appeared at a status hearing to discuss the government's sampling process. The government noted that the process was "very time consuming," and yielded largely boilerplate information (12/19/16 Tr. 13-15). Given the administrative burden, the government suggested using the sampling process for 10%, rather than 100%, of the PR/TT matters filed in 2012 (12/19/16 Tr. 13, 15, 17-18). Appellants objected, requesting unsealing of 100% of the records with redactions, but agreed not to challenge the government's particular redactions (12/19/16 Tr. 5-6, 12, 27-28; JA 873).

During the hearing, the parties learned that records for PR/TT matters from 2001 to 2007 would be exceedingly difficult to retrieve because the records were not stored electronically (12/19/16 Tr. 14-15).

17

Judge Howell suggested that the government "extract" certain categories of information from the electronically available records (12/19/16 Tr. 20-21, 23-24). That approach would be "one way to reduce the burden and satisfy public policy interests" in access to judicial records and "might be an alternative [to the] more time-consuming task of redaction" (12/19/16 Tr. 32). Appellants agreed to seek only information about closed investigations, and Judge Howell responded that, "determining whether a case is open or closed. . . can [itself] be a burdensome step" (12/19/16 Tr. 26-27).

On January 17, 2017, appellants agreed to limit their request to PR/TT matters filed by the USAO-DC between 2008 and 2016 because the Clerk's Office was able to retrieve those records electronically (JA 98, 873). The parties agreed, in principle, to the extraction approach, but disagreed about the number of matters the government would provide (JA 98, 873-74). When appellants requested 100% of the matters filed from 2008 to 2016, the government objected because the request was unduly burdensome (JA 99-100, 873-74).

On February 10, 2017, the government agreed to the unsealing (with redactions) of two categories of PR/TT matters: 1) matters in which

18

an application was denied; and 2) matters in which a substantive opinion or order was issued by the court (JA 104, 873). The parties also agreed that the USAO-DC would extract 15 specific categories of information from some or all of the sealed PR/TT dockets: (1) case number, (2) docket number, (3) date executed, (4) date docketed, (5) type (original or extension application), (6) order accompanied by opinion (yes, no, or not applicable), (7) number of pages, (8) signed by (AUSA or Magistrate Judge name), (9) device type, (10) statutory violation(s), (11) agency, (12) service provider, (13) number of target email addresses/phone numbers/addresses, etc., (14) statutory authority (e.g., Section 2703(d)), and (15) other requests, and if so, for what (e.g., cell site data) (collectively "extracted information") (JA 108, 874). The parties disagreed over whether the government could withhold the names of AUSAs involved in the matters or redact the statutory violation at issue in sensitive matters (JA 104-05, 874). Appellants also requested a list of docket information for the remaining PR/TT matters (filed between 2008 and 2011, and 2013 and 2016) (JA 105).

On February 17, 2017, the district court granted appellants' request for a list of docket information for the remaining PR/TT matters (2/17/17

19

Tr. 4). The Court also discussed the parties' agreement to proceed with the 10% extraction process for 2012, and the particular categories of information that would be disclosed (2/17/17 Tr. 11-17). The Court ruled that the government could withhold AUSA names and, in particularly sensitive matters, the statutory violations at issue (2/17/17 Tr. 21-22).

On February 22, 2017, the court publicly released lists of case numbers and docket information for PR/TT matters filed by the USAO-DC in years 2011 and 2013 through 2016 (JA 109-507).[7]

On April 14, 2017, the parties filed a Sixth Joint Status Report (JA 508-29). In the report, the government stated that completing the extraction process for 10% of PR/TT matters filed by the USAO-DC in 2012 -- 24 matters -- took approximately 8 hours (JA 511, 875). The government noted that it was prepared to complete a similar extraction process for 10% of the PR/TT matters filed by the USAO-DC between 2008 and 2011, and 2013 and 2016 (JA 511, 875). Appellants argued that

---

[7] The total number of matters was: Attachment A (2011) 284 matters; Attachment B (2013) 310 matters; Attachment C (2014) 209 matters; Attachment D (2015) 217 matters; and Attachment E (2016) 189 matters (JA 110).

a 10% extraction process for these years was "statistically insignificant" and sought 100% of the requested material (JA 513).

The parties continued to work on prospective relief, including a means for allowing the USAO-DC to file sealed matters electronically, with uniform captioning that could be released publicly, similar to the "EC docket" used by the United States District Court for the Eastern District of Virginia, and described in *Appelbaum*, 707 F.3d at 283 (see JA 516-17).

On April 24, 2017, the district court publicly released lists of docket information for PR/TT matters filed by the USAO-DC in years 2008 through 2010 (JA 530-759).[8] The total number of PR/TT applications filed by the USAO-DC from 2008 to 2016 was 2,248 (JA 866, 907-08). The district court also released 678 pages of information concerning the filing of these 2,248 matters (JA 866, 908).

---

[8] See JA 530-31 (disclosing matters as follows: Attachment A (2008) 329 matters; Attachment B (2009) 244 matters; Attachment C (2010) 231 matters).

21

On July 7, 2017, the government filed five charts, a total of 42 pages, reflecting the extracted information for 10% of the PR/TT matters filed by the USAO-DC in 2011, and 2013-16 (JA 762-803).

On July 14, 2017, the parties requested that the Clerk's Office perform a search of the § 2703(d) applications filed by all government filers from 2008 to 2016 in order to obtain the total number of filings (7/14/17 Tr. 4-7, 10). The parties also discussed how the Clerk's Office could generate lists of SCA warrants, filed pursuant to § 2703(a) and (b), during these same years (7/14/17 Tr. 7-9, 13-22). On July 17, 2017, the Clerk's Office informed the parties that the total number of § 2703(d) matters filed by the USAO-DC and other institutional litigants for years 2008 to 2016 was 2,636 (JA 868, 908).

On August 15, 2017, the USAO-DC and the Clerk's Office entered into an MOU authorizing the USAO-DC to apply for PR/TT orders and SCA warrants and orders electronically (MOU at 1). In addition, the MOU requires case captions for sealed applications and orders to follow standardized formats and to exclude personally identifying information

22

(MOU at 2).[9] Such standardized captions enable the Clerk's Office to generate biannual reports, available to the public thorough the court's case management and electronic filing system ("CM/ECF"), reflecting the total number of sealed matters, applicable docket numbers, and case captions, without undertaking the burdensome task of redacting personally identifiable information that would have otherwise been included in the caption (MOU at 2; JA 918-19).[10]

On August 25, 2017, appellants filed a pleading with the district court (Document 47) seeking "extraction charts" for 100% of the PR/TT matters filed by the USAO-DC from 2008 to the present (JA 885). Appellants also sought the unsealing of case numbers and docket

---

[9] The captions for sealed applications and orders filed under the SCA and PRA, for example, contain: (1) the number of target telephone lines, subscriber accounts, and/or devices that are the application's subject or subjects; (2) the type of target or targets (e.g., a landline, cellular, or mobile telephone; email account; cell tower; or other facility or device) subject to the application; (3) the service provider to which the order would be directed; and (4) the primary offense statute(s) under investigation (MOU at 2).

[10] The Clerk's Office has also adopted new CM/ECF case types to more readily identify the type of criminal investigative matter being initiated (MOU at 1). Thus, rather than assigning general MC numbers to many different types of sealed criminal investigative matters, the Clerk's Office will assign more specialized docket numbers reflective of the type of matter (MOU at 1; JA 919).

information relating to § 2703(d) orders from 2008 to the present (JA 885). Appellants did not seek SCA warrant materials filed in the past (JA 885).

As prospective relief, appellants requested electronic filing of all PR/TT and SCA matters, and publication of case numbers and certain docket information for all SCA warrants and PR/TT and § 2703(d) orders (JA 885). In addition, they proposed that all PR/TT and SCA matters remain under seal for 180 days, after which the court would enter an order to show cause why each particular matter should not be unsealed in its entirety (JA 885).

## The District Court's Initial Ruling

On February 26, 2018, Judge Howell granted in part and denied in part the petitions.

### 1.    First Amendment Right of Access

The district court held that the public lacks a First Amendment right of access to the contested materials (JA 886). The court explained that, to establish a right of access to judicial records under the First Amendment, a petitioner must show both (1) "an 'unbroken, uncontradicted history' of openness" as to the materials to which access

24

is sought and that (2) "public access plays a significant positive role in the functioning of the proceeding." JA 886 (quoting *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011)).

Appellants' First Amendment right of access claim failed because, as appellants conceded, there was no longstanding tradition of public access to the PR/TT and SCA materials at issue (JA 887). The historical practice, as well as the PRA and SCA, showed that no tradition of openness exists with respect to the materials appellants sought to unseal (JA 886-87). Specifically, Judge Howell made a factual finding that SCA materials historically have not been publically available (JA 857, 887). She noted that appellants acknowledged that such materials "routinely" are "maintained under seal" (JA 887). See JA 14 (unsealing petition) (noting that records at issue "are typically sealed in their entirety").

Moreover, the relevant statutory scheme shows that the contested materials have not traditionally been available to the public (JA 887-88). For example, the PRA permits, as a default presumption, indefinite sealing of surveillance orders. *See* 18 U.S.C. § 3123(d) ("An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that . . . the order be sealed until

25

otherwise ordered by the court."). Although the SCA contains no similar default sealing or nondisclosure provisions, it authorizes the government to request nondisclosure and, in practice, the government has "always been able to restrict access" to SCA warrants and § 2703(d) orders "by requesting a sealing order, regardless of the statutory default." See JA 887-88 (quoting *Appelbaum*, 707 F.3d at 291 n.9).

Judge Howell also found that appellants could not rely on the public availability of executed search warrants issued under Fed. R. Crim. P. 41, as none of the contested materials are analogous to traditional search warrants (JA 889-95). In rejecting appellants' argument, Judge Howell determined that SCA warrants, and applications for § 2703(d) and PR/TT orders are more analogous to subpoenas, to which no recognized First Amendment right of access attaches (JA 890-95). For example, an SCA warrant is aimed at "disclosure by a provider," and its execution always requires the third-party provider's compliance, *see* 18 U.S.C. § 2703(a), whereas a traditional search warrant's execution does not. *See* Fed. R. Crim. P. 41. See JA 890-94. Similarly, § 2703(d) and PR/TT orders, unlike traditional search warrants, function like subpoenas and do not require a showing of probable cause (JA 895-96).

26

## 2.    Common Law Right of Access

The district court found that the contested materials are "judicial records" (JA 897). The public has a common law right of access to judicial records when its "interest in disclosure" outweighs "the government's interest in keeping the document[s] secret." JA 897 (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996)). In balancing these interests, Judge Howell applied *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980), which sets forth factors courts must consider in determining whether unsealing is appropriate, including: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) objections to disclosure; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings (JA 899-905).    A court may also consider "the particularized privacy or other interests that" a party asserts (JA 907 (quoting *Hubbard*, 650 F.2d at 323). Judge Howell concluded that five of these six *Hubbard* factors weighed in favor of some limited, prospective

27

right of access to SCA warrant, § 2703(d) order, and PR/TT materials (JA 905). Only the second factor weighed against release (JA 902).

The district court held that the MOU's provision of biannual reports struck an appropriate balance between the limited public right of access, and the need to protect the integrity of ongoing investigations (JA 919-22).[11] In particular, the court concluded that the MOU procedures protected appellants' prospective common law right of access to information regarding the total number of PR/TT, § 2703(d), and SCA warrant applications filed by the USAO-DC, the number and type of accounts that such applications target, the names of the providers to which these applications are directed, and the primary criminal offense under investigation for these applications (JA 921). Moreover, the MOU's new administrative and operational rules for filing sealed government surveillance applications would significantly ease the administrative

---

[11] Appellants repeatedly stated that they were not seeking materials related to ongoing investigations. See JA 920-21 (citing, inter alia, 12/19/16 Tr. 23 (request limited to "closed investigations"), 26 (disclaiming right to material in "open investigations"); 2/17/17 Tr. 16 (seeking information for "closed investigations")).

burden on the Clerk's Office that limited, forward-looking unsealing of surveillance materials would entail (JA 918-19).

This significant administrative burden, however, constituted a "particularized" factor, *Hubbard*, 650 F.2d at 322-24, that weighed against recognition of a retrospective right of access to the contested materials (JA 910). Judge Howell focused on the practical challenges of wide-scale unsealing of surveillance applications and associated materials (JA 907-08). With respect to PR/TT matters, Judge Howell noted that completing the extraction process for 100% of the PR/TT matters that the USAO-DC initiated between 2008 and 2016, minus the 24 PR/TT applications from which information has already been extracted, would take approximately 788 hours, "nearly 33 days working around the clock nonstop, or nearly twenty 40-hour workweeks" (JA 908). "Complying with such a mandate," the court found, "would divert significant amounts of valuable AUSA time and resources" (JA 908).

Judge Howell also found that unsealing "§ 2703(d) matter docket information . . . would impose similarly significant resource burdens on the Court and Clerk's Office by consuming substantial amounts of staff time—in particular, time necessary to ensure that information properly

29

left under seal is not inadvertently disclosed" (JA 908). Indeed, "assembling lists of historical § 2703(d) matters would require multiple Court and Clerk's Office staff members to scrutinize meticulously every entry on each page of every list released to purge these lists of any information bearing on personal identification or law enforcement investigative concerns" (JA 909). As the court explained, "[t]he lack of standardized case names or captions on applications and orders filed during the relevant nine-year period makes this task particularly challenging, as these captions have sensitive information bearing on personal identification peppered throughout" (JA 909). Accordingly, the court concluded, appellants lack a retrospective right of access under the common law to any additional material.

## The Motion for Reconsideration

On March 23, 2018, appellants asked the court to reconsider its conclusions that the First Amendment affords no right of access to the three categories of judicial records at issue and the common law provides no broader right of access than the district court recognized (JA 12, 928; Document 55). Appellants also argued that the court's factual findings

30

concerning the administrative burden in unsealing the contested materials were insufficient to support its conclusions (JA 928).

The district court denied appellants' motion, reaffirmed its earlier conclusions, and held that appellants had not shown "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." See JA 930 (quoting *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006)).

## SUMMARY OF ARGUMENT

The district court properly found that the public lacks a First Amendment right of access to certain documents filed in the district court in connection with active criminal investigations, including applications for SCA warrants, 18 U.S.C. § 2703(a), court orders issued under the SCA, 18 U.S.C. § 2703(d), and PR/TT requests under 18 U.S.C. § 3123, because there is no longstanding tradition of public access to these materials.

Moreover, the district court did not abuse its discretion in concluding that there is only a limited common law right of access to the contested materials, which are routinely maintained under seal. The district court properly considered the extensive administrative burden

31

that unsealing the requested materials would impose on the parties and the district court, and made factual findings concerning the burden sufficient to support its conclusion. *See Hubbard*, 650 F.2d at 323 (when considering an unsealing request, a court may consider "the particularized privacy or other interests" a party asserts in maintaining the records under seal).

## ARGUMENT

### I.    The Public Lacks a First Amendment Right of Access to the Contested Materials.

Appellants claim a First Amendment right of access to pre-indictment investigatory materials, which are routinely filed and maintained under seal. Appellants' claim lacks merit. Appellants cannot show that the types of SCA and PR/TT materials they seek have been publicly available, nor can they show that the contested materials should be treated as those for which courts have recognized a First Amendment right of access. Indeed, appellants have not identified any court that has ordered the sweeping unsealing of SCA and PRA materials that they seek in this case.

32

### A.    Standard of Review and Applicable Legal Principles

This Court reviews purely legal questions de novo. *United States v. Day*, 524 F.3d 1361, 1367 (D.C. Cir. 2008). Courts utilize a two-step framework to assess the validity of a claimed First Amendment right of access. *See generally Press-Enter. Co. v. Superior Court of Cal.* ("*Press-Enter. I*"), 464 U.S. 501, 510 (1984), and *Press-Enter. Co. v. Superior Court of Cal. for Riverside Cty.* ("*Press-Enter. II*"), 478 U.S. 1, 8-9 (1986). The inquiry's first step – the "experience and logic" test -- is to determine whether a qualified right of access exists. "The public possesses a qualified First Amendment right of access to judicial proceedings where (i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding." *Brice*, 649 F.3d at 795 (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980)).

"Where there is a First Amendment right of access to a judicial proceeding, the 'presumption of access can be overridden only if (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect

33

the compelling interest.'" *Brice*, 649 F.3d at 796 (quoting *Wash. Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991)).

The Supreme Court has recognized a limited First Amendment right of access to criminal trials, *see Richmond Newspapers, Inc.*, 448 U.S. at 573,  and to "judicial proceedings that are part of the criminal trial process," *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 935 (D.C. Cir. 2003), such as criminal voir dire, *see Press-Enter. I*, 464 U.S. at 505. "[M]ost circuit courts," moreover, "have recognized that the First Amendment right of access extends to civil trials and some civil filings." *ACLU v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011) (collecting cases).

## B.   Discussion

The district court properly concluded that, because appellants cannot satisfy the "experience and logic" test, they lack a First Amendment right of access to the materials they seek on appeal.

There is no "unbroken, uncontradicted history" of openness, *see Brice*, 649 F.3d at 795, to the SCA and PRA materials appellants seek, and they do not argue otherwise. Indeed, in their brief on appeal,

34

appellants acknowledge that the contested materials "are routinely maintained under seal indefinitely" (Brief at 3).

Further, Judge Howell correctly observed that the relevant statutory text indicates that the contested materials have not traditionally been available to the public. For example, the PRA presumes that surveillance orders will remain sealed. *See* 18 U.S.C. § 3123(d) ("An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that . . . the order be sealed until otherwise ordered by the court."). Similarly, the SCA authorizes the government to seal materials, and, in practice, the government has "always been able to restrict access" to SCA warrants and § 2703(d) orders "by requesting a sealing order." *Appelbaum*, 707 F.3d at 291 n.9 (citation omitted).

Recognizing that the public lacks a tradition of access to the contested materials, appellants argue (at 26, 33-34) instead that courts should consider these materials as analogous to traditional search warrants issued under Fed. R. Crim. P. 41, for which, they argue, there is a tradition of public access. *See United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997) ("A new procedure that substituted for an older

one" is "evaluated by the tradition of access to the older procedure.").[12]

That argument lacks merit. As Judge Howell correctly concluded, SCA

warrants, § 2703(d) orders, and PR/TT orders are more analogous to

subpoenas, to which no recognized First Amendment right of access

attaches.[13] *See Appelbaum*, 707 F.3d at 292 ("§ 2703(d) orders are most

---

[12] Appellants' reliance on *El-Sayegh* is misplaced. That case actually supports the government's position in this appeal. In *El-Sayegh*, this Court concluded that there was *no* public right of access to a proposed plea agreement provided to the district court in camera and under seal, where that plea agreement was not consummated. 131 F.3d at 160-61 (citing *Washington Post v. Robinson*, 935 F.2d 282, 290 (D.C. Cir. 1991) (holding that First Amendment protects public access to plea agreement on which judgment has been entered)). Here, appellants seek access to broad classes of investigatory surveillance warrants and orders, which, like the withdrawn plea agreement in *El-Sayegh*, have no longstanding tradition of public access.

[13] Appellants assert (at 14, 17) that in the district court the government "did not dispute" appellants' contention that SCA warrants are akin to traditional warrants. That is incorrect. See Document 58 ("The USAO-DC has not agreed, however, that the First Amendment or the common law right of access provide appellants with the wholesale and sweeping relief that they seek in this litigation."); ("The PR/TT and § 2703(d) matters to which appellants seek access are, at their core, pre-indictment, investigative matters, akin to grand jury proceedings which traditionally have been afforded a broad degree of secrecy; these materials are not like . . . search warrant materials"); ("we do not agree that PR/TT and § 2703(d) matters are analogous to search warrant materials and do not agree that appellants have a First Amendment or common law right to these matters.").

analogous to sealed or unexecuted search warrants and grand jury proceedings for which traditionally, there is no history of access.").

The district court correctly concluded that an SCA warrant, though a "warrant" in name, is more analogous to a subpoena than to a traditional search warrant. First, as to its method of execution, an SCA warrant does not authorize the government to search and seize "persons or things," as a search warrant does. *See* Fed. R. Crim. P. 41. Rather, an SCA warrant requires a provider to "disclos[e] . . . the contents of [certain] communication[s]," 18 U.S.C. § 2703(a), like a subpoena. Similarly, an SCA warrant issued pursuant to 18 U.S.C. § 2703(a) always requires a third-party provider's compliance, whereas a traditional search warrant's execution does not. *See* Fed. R. Crim. P. 41. That is, a person subject to a search and seizure pursuant to a traditional search warrant is entitled to be notified of such search and seizure, *see* Fed. R. Crim. P. 41(f)(1) (warrant's execution and return must be in the "presence of . . . the person from whom, or from whose premises, the property was taken"), whereas a person whose information the government obtains through an SCA warrant is not entitled to know the government has obtained such information. 18 U.S.C. §2703(a)-(b). By design, Congress intended *less*

37

public disclosure of searches conducted pursuant to SCA warrants than those conducted pursuant to traditional search warrants.

Finally, § 2703 incorporates only those procedures of Federal Rule of Criminal Procedure 41 that govern a warrant's issuance, not those addressing its execution. 18 U.S.C. § 2703(a). Thus, as a matter of function and substance, an SCA warrant is more like a subpoena than a traditional search warrant.

Appellants argue (at 26) that the SCA's plain language supports their assertion that an SCA warrant is akin to a Rule 41 search warrant, because the use of the term "warrant," carries particular legal significance. Appellants place undue reliance upon this terminology. The statute requires "disclosure by a provider" instead of a search conducted by law enforcement personnel. 18 U.S.C. § 2703(g). *See Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 646 (7th Cir. 2013) ("First Amendment analysis looks to the substance of the government's powers rather than how an Act nominally refers to those powers."). Furthermore, Congress's purpose in using the term "warrant" in the SCA was to import some -- but not all -- of Rule 41's requirements. *See United States v. Ackies*, 918 F.3d 190, 201-02 (1st Cir. 2019) ("§

38

2703(a) incorporates only those provisions of Rule 41 that address the 'specific method' or 'particular way' to issue a warrant") (quoting *United States v. Berkos*, 543 F.3d 392, 398 (7th Cir. 2008)).[14] Nothing in the SCA's text, structure, or legislative history suggests a congressional design to incorporate into the SCA any First Amendment right of access to records related to an SCA warrant. *Cf. Ctr. for Nat'l Sec. Studies*, 331 F.3d at 933 (rejecting claim that disclosure of records relating to law-enforcement investigation was "required by both the First Amendment and the common law right of access to government information.").[15]

Appellants argue (at 28) that the CLOUD Act, enacted as part of the Consolidated Appropriations Act, 2018, Pub. L. 115-141, supports their plain-language argument that the term "warrant" in the SCA is "a

---

[14] For this reason, amici First and Fourth Amendment Scholars are incorrect (at 6, 9-10) that the district court made an overly "formalistic distinction" between SCA warrants and traditional warrants, and that 18 U.S.C. § 2703(a)'s reference to "the Federal Rules of Criminal Procedure" suggests that Congress intended to equate SCA warrants and traditional warrants.

[15] Indeed, in enacting the Freedom of Information Act ("FOIA") exemptions, *see* 5 U.S.C. § 552(b)(7)(A), "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 933 (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232 (1978)).

39

term of art" because "Congress did not clarify that SCA warrants are akin to subpoenas" and, if that were the case, the CLOUD Act would have been "superfluous." Appellants' argument is strained and lacks merit. The CLOUD Act states that,

> [a] provider . . . shall comply with the obligations of this chapter to preserve, backup, or disclose the contents of a wire or electronic communication and any record or other information pertaining to a customer or subscriber within such provider's possession, custody, or control, regardless of whether such communication, record, or other information is located within or outside of the United States.

18 U.S.C. § 2713. It does not follow from the CLOUD Act's silence on the issue presented in this case that an SCA warrant is akin to a traditional warrant. On the contrary, by expanding the extra-territorial reach of SCA warrants, Congress made clear that SCA warrants function like subpoenas rather than traditional search warrants. *See Ackies*, 918 F.3d at 201-02 (distinguishing SCA warrant from search warrant issued pursuant to Fed. R. Crim. P. 41)).

Appellants also contend (at 27) that the SCA's legislative history supports the conclusion an SCA warrant is like a traditional warrant. Appellants are incorrect. The legislative history they cite indicates only that Congress intended to import into SCA warrants the probable cause

40

requirement. *See* H.R. Rep. No. 99-647 at 68 (1986) ("The Committee required the government to obtain a search warrant because it concluded that the contents of a message in storage [for less than 180 days] were protected by the Fourth Amendment."); S. Rep. 99-541 at 3 (1986) (describing the SCA's purpose as "to protect privacy interests in personal and proprietary information, while protecting the Government's legitimate law enforcement needs.").

Appellants also note (at 30-31) that SCA warrants are like traditional search warrants because the latter may require third-party compliance. An SCA warrant's execution, however, *always* requires a third-party provider's compliance, see 18 U.S.C. § 2703(a), whereas a traditional search warrant's execution does not. *See* Fed. R. Crim. P. 41. Similarly, although the SCA permits a government agent's physical presence during the execution of an SCA search warrant (see Brief at 31), as officer's presence is not required. *See* 18 U.S.C. § 2703(g) ("the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter"). In contrast, a traditional search warrant's execution always *requires* a government officer's physical presence. *See* Fed. R. Crim. P. 41.

41

Appellants contend (at 31) that an SCA warrant is akin to a traditional warrant because the execution of an SCA warrant is a Fourth Amendment search and seizure. That argument is a red herring. The Fourth Amendment is implicated in many encounters between citizens and the government that do not involve warrants at all. *See, e.g., Rodriguez v. United States*, 135 S. Ct. 1609, 1611 (2015) (discussing investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968)). That an SCA warrant's execution constitutes a search within the Fourth Amendment's meaning says little or nothing about whether an SCA warrant is more analogous to a traditional search warrant than to a subpoena.[16]

---

[16] Appellants also point to DOJ policy (at 8 n.2, 29) as supporting the conclusion that SCA warrants function like traditional warrants. According to appellants (at 8 n.2), DOJ attorneys always utilize SCA warrants "when compelling the disclosure of the contents of electronic communications." Of course, the operative term in appellants' assertion is the "*contents*" of communications. The *contents of* communications obviously differ from the *subscriber information* the government can (and does) obtain through § 2703(d) orders on a showing less than probable cause. In any event, as a matter of policy, the Department is always free to do more than is legally required. Appellants also argue (at 13) that under 28 C.F.R. § 50.9(f), the DOJ is required to periodically review sealed matters to determine whether unsealing is warranted. The cited rule applies only to trials; it explicitly does not apply to investigations. *See* 28 C.F.R. § 50.9(a), (e)(3).

42

The district court also correctly concluded that § 2703(d) and PR/TT orders are even more unlike traditional search warrants than SCA warrants. Unlike a traditional search warrant, a § 2703(d) order requires a provider to disclose information and does not authorize the government to conduct a physical search. *See Appelbaum*, 707 F.3d at 292. Moreover, § 2703(d) allows a provider an opportunity to move to quash the order before complying with it. *See* 18 U.S.C. § 2703(b)-(d). A § 2703(d) order's issuance need not comply with Rule 41 procedures or Rule 41's "probable cause" standard, but instead requires only "specific and articulable facts showing that there are reasonable grounds to believe" the information sought is "relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

A PR/TT order likewise does not authorize government agents physically to search or seize "persons or things" in the manner of a search warrant. Although such orders authorize the installation of a PR/TT device at a "telephone line or other facility," the showing required for issuance of a PR/TT order is mere relevance "to an ongoing criminal investigation." 18 U.S.C. §§ 3123(a)(1), (b)(1)(A).

43

Appellants cite no case law expressly recognizing any entitlement to unsealing of the type and magnitude of information they seek in this appeal, including real-time docket information. In *Appelbaum*, the Fourth Circuit rejected a "challenge to the docketing procedures in the Eastern District of Virginia," holding that "there is no First Amendment right of access to § 2703(d) proceedings," and that "district courts [need not] publicly docket each matter in the § 2703(d) context." 707 F.3d at 295 (describing requested relief as "uncharted waters").[17] *See also id.* at 292 (recognizing need for sealing of § 2703(d) proceedings, given that "the issuance of and compliance with § 2703(d) orders, are ex parte in nature, and occur at the investigative, pre-grand jury, pre-indictment phase of what may or may not mature into an indictment."); *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000) (noting that, pre-indictment investigative processes "where privacy and secrecy are the norm" "are not

---

[17] Appellants' attempt to distinguish *Appelbaum* (at 36) because, in that case, the petitioners conceded the lack of tradition of access in the "pre-grand jury stage" of a case. This argument falls flat. Although the petitioners in that case did not contest the experience prong of the "experience and logic" test, the court addressed it. 707 F.3d at 291 n.9. Further, the court explained that the same concerns that animate the sealing of grand-jury material apply to § 2703(d) proceedings. *Id.* at 295.

44

amenable to the practices and procedures employed in connection with other judicial proceedings.").

Contrary to appellants' claims (at 31), *Carpenter v. United States*, 138 S. Ct. 2206, 2216 (2018), does not undermine the district court's First Amendment analysis. *Carpenter* involved a different circumstance: the "expectation of privacy in [one's] physical location and movements." *Id.* at 2217. *Carpenter* involved the tracking of the defendant's movements through cell-site location information. *Id.* The Court observed that the cell-site location information at issue, which recorded Carpenter's "physical movements," "partakes of many of the qualities of the GPS monitoring we considered in *Jones*." *Id.* at 2216 (citing *United States v. Jones*, 565 U.S. 400, 405-06 (2012) (long-term GPS monitoring of vehicle's movements constituted a search under the Fourth Amendment)). Thus, the result in *Carpenter* hinged on the "the *unique nature* of cell phone location records," *id.* at 2217 (emphasis added), and its holding is not as broad as appellants claim. *See United States v. Ackies*, 918 F.3d at 202 (discussing *Carpenter*'s holding and the uniqueness of cellular-location

45

data). Outside the context of cellular-location data, *Carpenter* does not alter the § 2703(d) apparatus.[18]

Appellants maintain (at 36-38) that allowing public access to § 2703(d) orders would be good policy, citing the example of reporter James Rosen, whose records were sought during a leak investigation. According to appellants (at 39), the government currently has "free rein" to obtain materials through electronic surveillance. Appellants are incorrect. Their argument wholly ignores the role of the district court in authorizing surveillance under the relevant statutory authorities. Moreover, federal law enforcement personnel have only limited ability to monitor members of the press. *See, e.g.,* Dep't of Justice, Final Rule, 79 Fed. Reg. 10989-01, 2014 WL 722497(F.R.) (revising at 28 C.F.R. § 50.10 to "ensure more robust oversight by senior Department officials; centralize the internal review and evaluation process; set out specific standards for the use and handling of information obtained from, or

---

[18] For these same reasons, amici First and Fourth Amendment Scholars' argument (at 16) lacks merit. *Carpenter* did not involve a First Amendment claim, and in that case the Supreme Court did not hold that SCA warrants are akin to traditional search warrants under Fed. R. Crim. P. 41. *Carpenter*, 138 S. Ct. at 2216.

records of, members of the news media; and extend the policies to cover the use of subpoenas, court orders issued pursuant to 18 U.S.C. §§ 2703(d) and -3123, and search warrants.").[19]

Finally, appellants are simply wrong about the policy implications of their broad and unprecedented unsealing request. As Judge Howell observed, "the public access to the judicial records at issue would raise real risks of disclosing personally identifiable information that could damage the reputations of persons investigated but never charged, jeopardize the safety of cooperating defendants and witnesses, and even discourage potential cooperators in the future" (JA 922). Public access could compromise future investigations by revealing the existence or workings of "investigative methods and techniques, the very efficacy of which may rely, in large part, on the public's lack of awareness that the USAO employs them" (JA 922). These considerations undermine appellants' argument that logic and policy weigh in favor of recognizing

---

[19] Amici First and Fourth Amendment Scholars (at 21) point to the DOJ's October 19, 2017, Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b), available at https://www.justice.gov/criminal-ccips/page/file/1005791/download. That policy only "applies prospectively." *See id.*

a broad right of access to the contested materials under the First Amendment. *See Appelbaum*, 707 F.3d at 295 ("we have never held, nor has any other federal court determined, that pre-indictment investigative matters such as § 2703(d) orders, pen registers, and wiretaps, which are all akin to grand jury investigations, must be publicly docketed.").

## II. The District Court Did Not Abuse Its Discretion in Concluding that, Under the Common Law, the Public Has Only a Limited, Prospective Right of Access to the Contested Materials.

Appellants claim (at 41-46) the district court abused its discretion in balancing the public's limited common law right of access to the contested materials with the expected administrative burden of unsealing those materials. To the contrary, the district court accommodated appellants' unsealing requests in substantial part, and denied those requests only insofar as they were too cumbersome to manage by the Clerk's Office and the USAO-DC.

### A. Standard of Review and Applicable Legal Principles

To establish a right of access to judicial records under the common law, a petitioner must show that "the public's interest in disclosure"

outweighs "the government's interest in keeping the document[s] secret." *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996) (internal quotation marks omitted). In undertaking this analysis, courts weigh six "generalized" factors, enumerated in *United States v. Hubbard*, as well as any relevant "particularized" factors," to determine "the precise weight to be assigned . . . to the always strong presumption in favor of public access to judicial proceedings." 650 F.2d 293, 317 (D.C. Cir. 1980).

The six generalized *Hubbard* factors are "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)).

*Hubbard* makes clear, however, that these general factors do not end the inquiry. A court also must consider any  particularized interests

49

in maintaining material under seal. *See Hubbard*, 650 F.2d at 323 ("To be weighed against the particularized reasons which may justify public access are the particularized privacy or other interests. . . defendants may assert."); *id.* at 324 (recognizing that a court may, in proper circumstances, determine disclosure's propriety "on the basis of the 'particularized' factors" even where "analysis of the generalized interests at stake" suggest a different outcome). A court's ultimate task, in applying the *Hubbard* factors, is to "consider[ ] the relevant facts and circumstances of the particular case, . . . weigh[ ] the interests advanced by the parties in light of the public interest and the duty of the courts," and reach a "conclu[sion]" as to "[w]hat justice so requires.'" *Metlife, Inc.*, 865 F.3d at 665-66 (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981)).

With respect to the common law right of access, the decision whether to seal a judicial record is committed to the discretion of the district court. *See United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978)). Similarly, this Court reviews the district court's application

50

of the *Hubbard* factors for abuse of discretion. *See EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d at 1409.

## B.    Discussion

Appellants argue that the court erred in weighing, under *Hubbard*, the administrative burden that a right of access would entail. Appellants' argument lacks merit. *Hubbard* expressly instructs courts to weigh "the particularized privacy or other interests that" a party "may assert" with respect to a request for unsealing, without defining or limiting in any way the "particularized . . . other interests" a court may consider. 650 F.2d at 323. This Court has recognized in analogous circumstances that courts may consider administrative burden. In *In re Sealed Case*, the district court did not abuse its discretion in concluding that "mandatory public docketing of grand jury ancillary proceedings . . . would be unduly burdensome," and that "administrative burdens [can] justif[y] the denial of across-the-board docketing." 199 F.3d at 525-27.

Here, appellants' unsealing petitions are unprecedented, implicating broad categories of investigative materials. In the district court, the only judicial decisions involving similarly broad unsealing requests cited by either party denied such requests on the ground of

51

administrative burden. *See In re Sealed Case*, 199 F.3d at 524-26; *In re Jennifer Granick & Riana Pfeffkorn*, No. 16-MC-80206-KAW, 2018 WL 7569335, at *16 (N.D. Cal. Dec. 18, 2018) (denying petition seeking unsealing of surveillance orders issued under the SCA and PRA, and concluding, inter alia, that "the presumptive common law right of access must give way to the administrative burden that would be imposed on the district court and the Government.").[20]

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 97 (2d Cir. 2004), cited by appellants (at 61-63), is not to the contrary.[21] *Pellegrino* recognized "a qualified First Amendment right of access to docket sheets." 380 F.3d at 86, 102. *Pellegrino* is distinguishable for two reasons.

---

[20] Similarly, *United States v. Camick*, 796 F.3d 1206, 1213 n.5 (10th Cir. 2015), cited by appellants at 54, does not assist their argument. In that case, the court denied a motion to seal a supplemental record, which allegedly was necessary to avoid an "unduly burdensome and costly" process of "review or redaction," given the "presumption in favor of the common-law right of access to judicial records." *Id*. This result, however, reflects the fact that litigants ordinarily invoke the common law right of access with respect to specific documents, not to wholesale categories of sealed matters filed over an almost decade-long period. *See id*. at 1213 n.5 (reviewing motion to seal the supplemental record in a single criminal case).

[21] And appellants are incorrect (at 52) in asserting that the district court "ignored these decisions." On the contrary, the district court expressly addressed them (JA 958 n.17).

52

First, that case involved civil and criminal trial matters, rather than pre-indictment investigatory matters, such as the "grand jury proceedings" that *Pellegrino* acknowledged "function properly only if kept secret." *Id.* at 96 ("The only decision denying a First Amendment right to public docketing concerned grand jury proceedings, which the Supreme Court has emphasized are entitled to a presumption of secrecy."). Second, in *Pellegrino*, the government never contended that administrative burden counseled against recognizing such a right of access, and *Pellegrino* never passed upon that argument.[22]

Appellants argue (at 46-47) that the district court erred in giving "dispositive" weight to the expected administrative burden occasioned by appellants' unsealing request. The court did not abuse its discretion in balancing the relevant factors, and it did not treat any factor as

---

[22] Appellants also cite (at 61) *United States v. Valenti*, 987 F.2d 708, 710, 715 (11th Cir. 1993), which held that the district court's maintenance of a "sealed docket in criminal cases" was "inconsistent with affording the various interests of the public and the press meaningful access to criminal proceedings." Like *Pellegrino*, however, *Valenti* involved criminal cases, not pre-indictment criminal investigative matters, as to which significant law enforcement, public safety, and privacy interests counterbalance the public's interest in transparency.

dispositive. Instead, the court expressly weighed each of the *Hubbard* factors (JA 900-06).

Appellants also argue (at 51) that the district court's interest balancing was not "connected to the content of the records at issue." *Hubbard* does not support this argument. Although *Hubbard* indicates that "the potential for prejudice inherent in the documents' release must be assessed with specific reference to the documents' contents," 650 F.2d at 323 n.116, courts must also weigh "the particularized privacy or other interests that" a "defendant may assert." *Id.* at 323. *Hubbard* does not define or otherwise limit the interests a court may consider. *Id.*

Finally, appellants argue (at 57) that the district court did not make sufficient factual findings to support its application of *Hubbard*. On the contrary, the district court identified, in great detail, the practical challenges that would attend the wide-scale unsealing of sealed surveillance applications and associated materials, including, most significantly, the careful review of each page of each document that would be required to ensure that sensitive information is not inadvertently disclosed (JA 907-09, 962-63). Specifically, the court found that "completing the extraction process for one hundred percent of PR/TT

54

matters that [the USAO] initiated between the years 2008 through 2016, minus the twenty-four 2012 PR/TT applications from which information has already been extracted, would take" between 720 and 788 hours, the latter figure amounting to "nearly 33 days working around the clock nonstop, or nearly twenty 40-hour workweeks" (JA 908, 962). "Complying with such a mandate," the court found, "would divert significant amounts of valuable AUSA time and resources" (JA 908, 962).[23]

The court further found that unsealing "§ 2703(d) matter docket information . . . would impose similarly significant resource burdens on the Court and Clerk's Office by consuming substantial amounts of staff time—in particular, time necessary to ensure that information properly left under seal is not inadvertently disclosed" (JA 962). In addition, "assembling lists of historical § 2703(d) matters would require multiple Court and Clerk's Office staff members to scrutinize meticulously every entry on each page of every list released to purge these lists of any

---

[23] Amici Former United States Magistrate Judges suggest (at 11-12) that, "the district court's concerns [as to the expected administrative burden of unsealing] have not been borne out by amici's experience in unsealing surveillance applications and orders of closed criminal matters." Of course, amicis' experience relates to different judicial districts, with different administrative practices.

information bearing on personal identification or law enforcement investigative concerns" (JA 962-63). "The lack of standardized case names or captions on applications and orders filed during the relevant nine-year period makes this task particularly challenging, as these captions have sensitive information bearing on personal identification peppered throughout" (JA 909).[24]

Appellants have not identified any judicial decision expressly recognizing a right of access to broad categories of sealed materials filed over a period of years. Nor have appellants cited any precedent requiring disclosure of real-time docket information, where, as here, the sealed materials pertain to the collection of evidence in pre-indictment criminal investigations. Accordingly, appellants' claim lacks merit.

---

[24] Appellants assert (at 62) that the district court did not specifically address access to docket sheets. That is incorrect. See, e.g., JA 958-59 (discussing access to docketing and citing *In re Sealed Case,* 199 F.3d at 525-26).

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

JESSIE K. LIU
United States Attorney

ELIZABETH TROSMAN
CHRISELLEN R. KOLB
PAMELA S. SATTERFIELD
Assistant United States Attorneys

/s/

PETER S. SMITH
D.C. Bar #465131
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
Peter.Smith@usdoj.gov
(202) 252-6829

57

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 11,305 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
_____
PETER S. SMITH
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellants, Jeffrey L. Light, Esq., jeffrey@lawofficeofjeffreylight.com, and Katie Townsend, Esq., ktownsend@rcfp.org, on this 22d day of April, 2019.

/s/
_____
PETER S. SMITH
Assistant United States Attorney
